In the Matter of the Estate of CAROLYN L. CASPER, Deceased.

Surrogate's Court, Westchester County, December 28, 1936.

*Sidney R. Fleisher* [*Richard H. Levet* of counsel], for Allan R. Campbell and James W. Good as executors.

*James J. Delaney*, for William F. Casper.

*Strang & Taylor* [*Clinton T. Taylor* and *James D. Hopkins* of counsel], for Leonard Kebler.

*Joel Mencher*, special guardian.

SLATER, S. In this judicial settlement, the executors seek a construction of a portion of the nineteenth paragraph of the will.

The decedent died December 7, 1933, leaving a will executed April 18, 1928. The will was admitted to probate in the county of Westchester on May 16, 1934. The nineteenth paragraph of the will is as follows:

" *Nineteenth.* I hereby authorize my executors, for the purpose of carrying out the provisions of this will, including the creation of trust funds, to sell any or all of my property, real, personal or mixed, except any property specifically described and disposed of herein, selling the same at public or private sale for such price as in their discretion may seem the best then obtainable; and I hereby authorize my executors to execute any and all deeds and other instruments necessary to effect a valid transfer of any property so sold to the purchaser thereof, and direct that the purchaser shall not be required to see to the application of the purchase moneys.

" *I direct, however, that as soon as practicable after my death my executors shall offer to Leonard Kebler*, of Bronxville, New York, or if he be not then living, to Ward Leonard Electric Company, the opportunity to purchase for cash, within sixty days from the date of such offer, all or any part of the shares of stock in Ward Leonard Electric Co. at a price per share arrived at by adding (1) twelve and one-half *per cent* of the average annual dividends paid on such share during the three calendar years preceding my death, and (2) six per cent of the average annual earnings of the Company during said three years, which were applicable to such shares after the payment of said dividends." (Italics mine.)

The will was prepared by an attorney of experience.

The portion of this paragraph which the parties herewith ask to have the court construe relates to the direction to offer to Leonard Kebler the opportunity to purchase the decedent's stock in the Ward Leonard Electric Company at a price per share arrived at by adding twelve and one-half *per cent* of the average annual dividends paid on such shares during the three calendar years preceding the decedent's death and six per cent of the average annual earnings during the said three years.

In the first instance the court referred the objections filed in the accounting proceedings and the question of construction to a referee.

Thereafter the executors sought to discontinue the construction part of the proceedings in relation to paragraph nineteenth. The motion was denied by this court and the order was affirmed by the Appellate Division. (248 App. Div. 636.) In the memorandum decision of the Appellate Division the court said, in affirming the order of the surrogate: " The claimed equitable considerations or defenses which the executors wish to assert against the contention of Kebler can be litigated before the surrogate." The matter was, therefore, remanded to and heard by this court.

In the nineteenth paragraph we find an express, binding direction to offer to Kebler the opportunity to purchase the decedent's stock in the Ward Leonard Electric Company at a price to be arrived at pursuant to a formula. The executors contend that no rights accrued to Leonard Kebler, as legatee, under the provisions of paragraph nineteenth of the will. At the time of the decedent's death, she held 960 shares of stock of the company. The price to be placed on the stock by the " *per cent* " method as stated in the formula in the will is $570 and the price to be fixed by the " *times* " method as contended by the executors would create a payment of $57,000. The testimony is that the market value of the stock at the time of the will making and since has been about $19,000. In the Federal tax proceeding its value is fixed at $38,400. It appears that neither formula is in conformity with the market or appraised value of the stock.

The testatrix's words are not in the nature of a recommendation or advice. They are an imperative direction creating a legacy, the right of acceptance of which passes to the legatee, or the corporation. A legacy is a disposition of personal property by will. (2 Jessup, § 917, p. 1891.) Every disposition of personal property in a will is a legacy. (Jessup, p. 1892.) The gift of stock, with the opportunity to pay a certain price, is a specific legacy (*Tifft* v. *Porter*, 8 N. Y. 516; *Crawford* v. *McCarthy*, 159 id. 514; *Matter of Security Trust Co.*, 221 id. 213; *Matter of Matthews*, 122 App. Div. 605; *Matter of Strasenburgh*, 136 Misc. 91, 93; affd., 228 App. Div. 880; *Matter of Anable*, 139 Misc. 914, 917), subject to a condition subsequent and vests in the legatee, subject to be divested by nonperformance. Such legacies are acts of bounty merely and the testator was free to withhold them altogether, or subject them to conditions either sensible or futile, and the gift is to be taken as made or not at all. (*Oliver* v. *Wells*, 254 N. Y. 451, 459; *Matter of Mahlstedt*, 140 Misc. 245, 251.) Similar provisions are not unfrequently found in wills. (*Matter of Walbridge*, 198 N. Y. 234, 236; *Matter of Miller*, 221 App. Div. 711.)

Any property given pursuant to a will is a legacy. It may be conditional, precedent or subsequent, but in every case it is a gift of some type which must be accepted by the legatee. A gift may be abandoned, or refused, except that which comes through the laws of intestacy. (*Matter of Mahlstedt*, 140 Misc. 245.) In the instant case the legacy has been accepted by Kebler pursuant to the words used in the will. He is a legatee of such stock.

The right of legatees to compel the payment of legacies is found in sections 217 and 218 of the Surrogate's Court Act.

This construction proceeding revolves itself around the words " *twelve and one-half per cent* " found in the nineteenth paragraph. The executors offered the stock to Leonard Kebler, the legatee, at a price of $59.375 per share, or $57,000, and thereafter Kebler demanded delivery of the stock at a price of $0.59375 per share, or $570. The executors contend that the words " *per cent* " contained in the nineteenth paragraph of the will should be construed as " *times;*" that the selection of the words " per cent " was the *result of a mistake* on the part of the testatrix; that the disposition of the stock was merely a matter of administrative discretion of the executors; that such unjust enrichment justifies equitable interference.

. The record discloses that the executors, upon the first hearing and upon a subsequent hearing, held pursuant to my decision (157 Misc. 834; 161 id. 199), offered testimony to support their equitable defenses. It was objected to by counsel for Mr. Kebler and decision by the court was at all times reserved. The court will now decide to sustain the objection of counsel for the legatee and exclude all extrinsic evidence. The entire testimony offered by the executors is excluded for the reasons hereafter stated.

The court will decide the construction on fundamental grounds. Courts of equity walk warily in reforming solemn instruments on the ground of mistake. It is not claimed by the executors that there is *ambiguity* in the use of the words " per cent." Their contention is based on the *mistake* of the testatrix and the unjust enrichment of the legatee. We have in the will what she said and now the executors want to insert what they think she should have said. It may be that she had a misapprehension of the legal effect of her language. None of us will ever know. If words are unambiguous, courts are precluded from taking parol evidence indicating that the testatrix did not mean what the will she executed says. Courts have no power to create a testamentary disposition which is neither expressed nor necessary to be implied. (*Matter of Tamargo*, 220 N. Y. 225, 231; *Dreyer* v. *Reisman*, 202 id. 476.) We

seek the intent of the testator as exhibited by the words selected. (*Matter of Bump*, 234 N. Y. 60, 63.)

For a court of equity to sustain the contention of the executors on the doctrine of unjust enrichment would be to evade the declared salutary law of the State. If the principle of unjust enrichment is applied in such a case " we may incorporate into a written will, not a writing alone, but even oral statements based on the slippery memory of a single witness. The doctrine of incorporation which exists to some extent in this State, may not be invoked to read into the will the recollection of the executor." (*Reynolds* v. *Reynolds*, 224 N. Y. 429, 435; *Matter of Fowles*, 222 id. 222, 232.) Such an equitable doctrine does not apply to the facts of the instant case. (*Brown* v. *Quintard*, 177 N. Y. 75, 83; *Matter of Schrier*, 145 Misc. 593, 595, and cases cited.) There existed no confidential relationship; there is no unjust enrichment under cover of the relation of confidence which puts the court in motion. Let it be said that a mistake occurred, however. The rule of law in this State will not change the words of a will where the words are unambiguous.

In *Dwight* v. *Fancher* (245 N. Y. 71 [1927]) the court said: " Evidence of extrinsic circumstances may sometimes assist the court in the construction of language which a testator has used to express his testamentary intention; but here the language of the will, even when read in the light of extrinsic circumstances, admits of but one construction. Parol evidence is not admissible to show that the testatrix did not mean what she has said in words, though these words may have been chosen by the attorney who drafted the will rather than by the testatrix. (*Reynolds* v. *Robinson*, 82 N. Y. 103.) "

In 1933 the same will again reached the Court of Appeals in *Matter of Watson* (262 N. Y. 284, 293). The court then wrote: " We have, however, only one rule to follow — it is fundamental. The intention of a will-maker is to be found in the words used in the will, and when these are clear and definite there is no power to change them." After referring to the limitations which may be imposed by the Legislature, the court continued to say: " But beyond such limitations a person may will his property as he pleases, and the courts are to carry out the directions, not add to, or take from them." The court, in that case, felt some concern, saying: " Every one naturally feels that the will should have been the other way, but courts do not make wills, and lawyers should draft them with such care that these results cannot happen unless foreseen and intended. The intention of one who makes a will can only be gathered after death from the instrument itself."

Carolyn L. Casper may have known what she was doing. Who can tell? As indicated in *Matter of Watson* (*supra*), what guide have we to follow except the words of the testator?

No power of revision of wills is intrusted to the courts. (*Matter of Durand*, 250 N. Y. 45, 55.) This rule has been stated with the proviso that extrinsic facts may be shown only where the language alone is of doubtful import. It means that the probable intention of the writer as indicated by such extrinsic facts may not prevail over the plain meaning of the written word. (*Matter of Smith*, 254 N. Y. 283, 289; *Matter of Nelson*, 268 id. 255, 259.)

A learned opinion on the legal question involved here, with somewhat similar facts, was written by Justice ROWLAND L. DAVIS, now of the Second Department, then of the Fourth Department, in *Union Trust Co.* v. *Boardman* ([Dec. 1925] 215 App. Div. 73, affd., 246 N. Y. 627). That action was for a judicial accounting and interpretation of portions of a trust agreement. Controversies had arisen between the beneficiaries of the trust instrument and they sought the court's interpretation of the written language. At page 77 the court asked the question: " May a court of equity grant reformation of the trust agreement between beneficiaries, after the donor's death, on the theory that his intended plan of distribution was defeated by an alleged *mistake in computation* " and that his real intention was that the parties should share equally? From evidence showing the relation of the parties, the paper upon which the donor made computations, the respondents claim to have shown conclusively that it was the intention of the donor that there should be equal division. The court assumed that, as far as is humanly possible to show, the proof was sufficient to justify a finding that the donor held all his grandnephews and grandnieces in equal affection and that he made a mistake in computation. The respondents succeeded at the trial in their claim that the written agreement may be reformed as between the beneficiaries and the donor's definite language may be nullified and new provisions inserted to carry out the intent. Justice DAVIS, in deciding, said (p. 78): " It is conceded that there is no authority in this State establishing a clear precedent for such a conclusion, but it is argued that the legal principle is well established in other jurisdictions and may properly be applied here." The court continued: " It seems to us a dangerous doctrine. Heretofore our courts have held in passing upon the written language used by a man disposing of his property to take effect after his death, that its jurisdiction extends only to the interpretation of ambiguous language in the instrument, or to a declaration of its invalidity. * * * Courts of equity have not assumed to exercise jurisdiction to make a

new agreement *or a new will for a party and to interject therein in the place of plain provisions, other provisions which the court may say the decedent had in his mind at some time but which he mistakenly omitted."* (Italics mine.) As against the respondents' contention, to make the change would be to redraft the instrument upon evidence which rests largely upon conjecture. The court again said (at p. 79): "It is quite evident that if this be the true doctrine (the one supported by the respondent), relative to gifts, made either during the lifetime of the donor or by a trust agreement or by will, a wide and unexplored field will be open for claims and litigation respecting property thus given." Again (at p. 80): "We are reluctant to introduce a new, and as we view it, dangerous doctrine into the settled law of the State. We hold that a court has no power or jurisdiction to go behind the definite language of the agreement and substitute new terms for those written by the donor. 'A will cannot be corrected because the testator misapprehended its effect. Nor as a general rule, is parol evidence admissible to supply omissions, or to control or explain the intention, or vary the legal construction.' (*Arthur* v. *Arthur*, 10 Barb. 9, 16.) The same rigid rule must be applied to a trust agreement disposing of the donor's property very largely after his death." (*Matter of Evans*, 135 Misc. 656; *Matter of Bent*, 142 id. 811; *Matter of Walsh*, 147 id. 103, 105; *Matter of Skidmore*, 148 id. 569, 581; *Matter of Levy*, 160 id. 394, 397.)

Leonard Kebler is a legatee of 960 shares of stock of the Ward Leonard Electric Company, subject to the payment of $570.

Other matters suggested for decision by brief of counsel will not be entertained.

Proceed accordingly.