*Decision will be entered under Rule 50.*

VICTOR R. WOLDER AND MARJORIE WOLDER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 297–70. Filed September 21, 1972.

*Victor R. Wolder* and *Sol R. Dunkin*, for the petitioners.
*Michael A. Menillo*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $23,-347.74 in petitioners' income tax for 1966. The issues presented involve the proper treatment for income tax purposes of certain securities and cash received by petitioner Victor R. Wolder from the estate of Marguerite K. Boyce, particularly whether the value thereof is excludable from gross income under section 102(a).[1]

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Victor R. Wolder (hereinafter referred to as petitioner) and Marjorie Wolder are husband and wife and resided in Port Chester, N.Y., at the time the petition herein was filed. They filed a joint Federal income tax return on a cash basis for 1966 with the district director of internal revenue, Manhattan, New York. Marjorie Wolder is a party to this proceeding only as a result of filing said joint return with petitioner.

On or about October 3, 1947, petitioner and Marguerite K. Boyce (hereinafter referred to as Marguerite) entered into a written agreement, whereby petitioner agreed to render to Marguerite "such legal services as she shall in her opinion personally require from time to time as long as both [Marguerite] and [petitioner] shall live and not to bill her for such services." In consideration therefor, Marguerite agreed that she would bequeath to petitioner or his estate 500 shares of class B common stock of White Laboratories, Inc. (which she then owned), and any additional shares, securities, rights, or stock dividends that she might acquire in the future by virtue of her ownership thereof.

From October 3, 1947, until Marguerite's death on July 24, 1965, petitioner rendered all legal services requested by Marguerite, including the preparation of her final will, without charge.

On September 19, 1957, White Laboratories, Inc., was merged into Schering Corp. and Marguerite received 750 shares of Schering common stock and 500 shares of Schering convertible preferred stock in exchange for her 500 shares in White Laboratories, Inc. The preferred stock was redeemed in 1964 for $15,845. A provision for petitioner's benefit reflecting the 1947 agreement, was included in each will or codicil executed by Marguerite after October 3, 1947, altered

---

[1] All references are to the Internal Revenue Code of 1954, as amended.

only to reflect the changes that occurred in her original interest in White Laboratories, Inc.

Marguerite died on July 24, 1965. Her last will and testament, executed on April 23, 1965, was admitted to probate on September 15, 1965. Petitioner and Manufacturers Hanover Trust Co. (Manufacturers) were appointed executors of Marguerite's estate on September 17, 1965. Marguerite's will provided, in pertinent part, as follows:

FIFTH: Whereas, heretofore I made a bequest to VICTOR R. WOLDER or to his estate if he predeceases me, certain shares of preferred stock and certain shares of common stock of Schering Corporation, and whereas I have heretofore disposed of the preferred stock and now own the common stock, now, therefore, I make the following provisions for his benefit and that of his estate if he predeceases me:

(a) I give and bequeath to VICTOR R. WOLDER, or, if he predeceases me, to his estate (or to such person or persons as he may appoint by his Last Will and Testament) the sum of Fifteen Thousand Eight Hundred Forty-Five ($15,845.00) Dollars.

(b) Further, I am now the owner of seven hundred fifty (750) shares of ($1.00 par value) common stock of Schering Corporation. It is my intention to give and bequeath to said VICTOR R. WOLDER, or his estate, if he predeceases me, said Schering Corporation stock which I now own and any stock or proceeds from the disposition which I may hereafter receive resulting therefrom. Therefore, I give and bequeath to said VICTOR R. WOLDER or to his estate if he shall predecease me (or to such person or persons as he may appoint by his Last Will and Testament) (a) seven hundred fifty (750) shares of common stock ($1.00 par value) of Schering Corporation, which stock I now own, and (b) if the said Schering Corp. shall hereafter issue stock dividends, warrants or rights or shall be refinanced, recapitalized, reorganized, merged or consolidated, or if any stock I at any time own in said corporation shall be split or if any such stock be exchanged for any other stock, or if I shall exercise any warrants or rights or my conversion rights under the preferred stock, such other or additional shares or securities or rights as I shall at any time hereafter own or acquire or be entitled to by virtue of my ownership of the aforementioned shares in the Schering Corporation; and (c) if any or all of said stock, securities, warrants or rights which I now own or hereafter acquire are disposed of during my life, then, with respect to the stock, securities, warrants and rights disposed of, an amount equivalent to the worth of such stock or securities, warrants or rights so disposed of, determined at the greater of their worth at the date or dates of their disposition or the greater of the worth of the original shares included in certain White Laboratories, Inc. Class "B" stock owned by me on October 3, 1947, before it was merged with Schering Corporation.

By letter dated October 1, 1965, petitioner advised his corporate co-executor as follows:

First, so as to, for all time, fix my rights I declare and I hereby elect to receive the legacy and bequest of $15,845.00 and the 750 shares of $1.00 par value common stock of Schering Corporation which was given to me by decedent under Paragraph FIFTH of her last Will.

In that letter, petitioner recommended that distribution be made forthwith of all specific legacies provided for in Marguerite's will.

At the time of Marguerite's death, the 750 shares of Schering Corp. common stock belonging to her were held in a custodial account with Manufacturers and were registered in the name of its nominee. Formal assignment of the shares occurred on January 13, 1966. The stock certificates were reregistered in petitioner's individual name on January 21, 1966, and received by petitioner on or before January 25, 1966.

Petitioner also received an amount equal to the dividends on the Schering stock totaling $675 declared and paid to Schering shareholders after Marguerite's death and during 1965.

Neither the shares of Schering stock nor the foregoing amount representing dividends thereon were included in the accounting filed by the executors.

In the latter part of February 1966, petitioner and Manufacturers were advised that the residuary legatees of Marguerite's will objected to the distribution of petitioner's cash legacy and also demanded the return of the Schering Corp stock (and the dividends thereon) to the estate, to be held by it until such time as petitioner established his claim thereto against the estate. In the ensuing litigation in the Surrogate's Court, New York County, the residuary legatees contended that the provisions in Marguerite's will merely provided for payment of a debt owed petitioner by Marguerite and that he was not entitled to payment unless he proved his claim in accordance with section 212 of the Surrogate's Court Act of New York.

On or about September 13, 1966, The Honorable S. Samuel DiFalco, surrogate, New York County, issued a decision which held that, by virtue of the provision in the will, "the testatrix fully and completely performed the promise, which she had made in the contract" and, in view of petitioner's unconditional acceptance of "the legacy," petitioner was not required to prove his claim in order to receive the benefits thereof. The surrogate went on to say that the residuary legatees might object to the final accounting of the executors in the event that petitioner had, in fact, breached his contract with Marguerite and the indebtedness representing such damages, if any, were not reflected in that accounting.

In a subsequent proceeding, dealing mainly with an issue not relevant herein, The Honorable Samuel J. Silverman, surrrogate, New York County, held that petitioner was "entitled to the benefits of the bequest under Article Fifth of the will."

On November 22, 1966, pursuant to an order of the Surrogate's Court, New York County, dated September 28, 1966, petitioner re-

ceived $15,845 from Marguerite's estate, this amount representing the balance of his legacy under article Fifth of Marguerite's will.

The assets of the estate, consisting almost entirely of cash, life insurance, and marketable securities, had a date-of-death value of $606,-836.37 and the estimated debts, taxes, and administration expenses amounted to $111,312.39.[2]

The fair market value of the Schering stock at the time of Marguerite's death was $46,945.31, its value as of January 13, 1966, was $63,937.50, and its value on February 2, 1966, was $68,625.

Petitioner sold the Schering stock he received from the estate as follows:

| Number of shares | Trade date | Settlement date | Amount | Net amount |
|---|---|---|---|---|
| 50 | 1/25/66 | 1/31/66 | $4,625.00 | $4,582.77 |
| 100 | 1/25/66 | 1/31/66 | 9,275.00 | 9,222.53 |
| 100 | 2/ 2/66 | 2/ 8/66 | 9,125.00 | 9,072.08 |
| 100 | 2/ 7/66 | 2/11/66 | 8,950.00 | 8,897.87 |
| 100 | 3/ 3/66 | 3/ 9/66 | 8,637.50 | 8,585.68 |
| 100 | 3/ 3/66 | 3/ 9/66 | 8,650.00 | 8,598.17 |
| 200 | 3/11/66 | 3/17/66 | 16,700.00 | 16,596.96 |
| Total | | | | 65,556.66 |

As a result of these sales, petitioner reported a long-term capital gain of $18,611.35 on his 1966 income tax return, this being the difference between the fair market value of the stock as of the date of Marguerite's death and the amount received on account of the sale thereof. The petitioner reported no income in 1966 on account of the receipt of any of the benefits from Marguerite.

In his notice of deficiency, respondent determined that the 750 shares of common stock of Schering Corp. constituted taxable income to the petitioner in an amount equivalent to its fair market value as of February 2, 1966 (the date respondent alleges that petitioner received the stock), amounting to $68,625. Respondent further determined that the cash distribution of $15,845 also received by petitioner under the will constituted additional income taxable to petitioner in 1966. Offsetting adjustments were made regarding the petitioner's sale of the Schering stock in 1966.

#### OPINION

The initial issue for decision is whether the cash and Schering stock received by petitioner under article Fifth of Marguerite's will constituted compensation for services, taxable under section 61, or a

---

[2] The final accounting showed debts, taxes, and administration expenses paid of $104,847.70 less credits of $1,515.56.

bequest, excludable from gross income under section 102(a).[3] Petitioner contends that these items fall in the latter category. His reasoning is that (1) the surrogate correctly held that he was a legatee and not a creditor and (2) such being the case, the provisions for his benefit constitute a "bequest" for Federal income tax purposes. Respondent contends that the provisions of article Fifth represent simply a method chosen by Marguerite to compensate petitioner for his services in accordance with her agreement with him and that the cash and stock which petitioner received should accordingly be taxed. For the reasons hereinafter set forth, we agree with respondent.

We find it unnecessary to decide, at least for the purposes of this initial issue, whether the surrogates' decisions that the provisions of article Fifth constituted a "bequest" correctly apply the applicable New York law. Cf. *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967). New York law can do no more than define the legal interests and rights of petitioners vis-à-vis Marguerite's estate; it cannot ascribe to those interests and rights a characterization which is binding for purposes of determining what is or is not taxable. *United States* v. *Mitchell*, 403 U.S. 190, 197 (1971); *Morgan* v. *Commissioner*, 309 U.S. 78, 80–81 (1940); *Hight* v. *United States*, 256 F. 2d 795, 800 (C.A. 2, 1958); *Estate of Anna Hart Kinney*, 39 T.C. 728, 731 (1963). The test of taxability depends upon what the item in question actually represents. *Hort* v. *Commissioner*, 313 U.S. 28 (1941); *Cotnam* v. *Commissioner*, 263 F. 2d 119 (C.A. 5, 1959), affirming on this issue 28 T.C. 947 (1957).

There is no question but that, under the 1947 agreement, petitioner undertook to render services to Marguerite without charge and that she, in turn, undertook to pay for them by way of a specific provision in her will. Similarly, there is no question that these undertakings were implemented. The intentions of the parties and their performance in accordance with those intentions is clear and, in our opinion, the critical factor. *Rose* v. *Grant*, 39 F. 2d 338, 340 (C.A. 5, 1930); *Mildred E. McDonald*, 2 T.C. 840, 849 (1943).[4]

The absence of any conditional language in the provisions of article Fifth is not determinative. It is simply one element to be taken into account along with the correlative element that petitioner prepared the document. We have no reason, on the basis of the record herein, to conclude that Marguerite was aware of the technical nature of the provision. Indeed, it seems more than likely that if her intention had been

---

[3] SEC. 102. GIFTS AND INHERITANCES.

(a) GENERAL RULE.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

[4] See also *Lee S. Jones,* T.C. Memo. 1964–39.

to bestow the cash and Schering stock on petitioner without regard to the 1947 agreement, the will would have specifically so stated.

With reference to the surrogates' decisions, we recognize that, although they are not controlling, they nevertheless are a further element which should properly be taken into account. Nevertheless, we do not find enough in these decisions to cause us to conclude that petitioner should prevail. Surrogate DiFalco merely held that petitioner did not have to prove his claim as a creditor. He was neither asked to decide, nor did he decide, that the provisions of article Fifth were not compensation or that petitioner would have been entitled to receive the benefits thereunder even if he had *not* performed his obligations under the 1947 agreement. Cf. *Hight* v. *United States*, 256 F. 2d at 801. In point of fact, Surrogate DiFalco referred to the possibility of an objection being raised in the final accounting in the event that it could be shown that petitioner had breached the agreement.

Petitioner's reliance on *United States* v. *Merriam*, 263 U.S. 179 (1923), and its progeny is misplaced. The issue in that case, and in those that followed it, was whether provisions for benefits to executors required the actual performance of services or merely initial qualification in that capacity; where the taxpayer was successful it was because the court found that no services were required. See, e.g., *Bank of New York* v. *Helvering*, 132 F. 2d 773 (C.A. 2, 1943), reversing a Memorandum Opinion of this Court. Petitioner's attempt to distinguish cases such as *Cotnam* v. *Commissioner*, *supra*, similarly misses the mark. His thesis is that those cases involve payments made by an estate because a testator failed to provide the promised compensation in his will, while here the promise was carried out. In a nutshell, petitioner would have us hold that breach produces taxability but observance does not. Petitioner's argument would have us transpose a well-known adage to read "honored more in the observance than in the breach." This we refuse to do. Cf. *Beecher* v. *United States*, 280 F. 2d 202, 204 (C.A. 3, 1960).

The long and the short of it is that petitioner and Marguerite made a bargain and the bargain was kept. Petitioner was to be paid for his services by way of Marguerite's will and this is precisely what happened.[5] Irrespective of its characterization under State law, what petitioner received was compensation for services and taxable as such under section 61.

We now turn to the further question of the year or years in which petitioner received the compensation. As to the $15,845 in cash, the parties agree that, if it is taxable to petitioner, it is income to him

---

[5] We find petitioner's finely drawn distinctions between what he was promised and what he in fact received totally unpersuasive.

in 1966. The dispute centers on the year in which the Schering stock was so received and the date as of which its value should be determined.[6]

Petitioner contends that, under New York law, his right to the stock was established as of the date of decedent's death and the doctrine of constructive receipt should be applied, thus eliminating the value of the stock from income in 1966. Alternatively, he suggests the applicability of section 1014(b)(1),[7] the consequences thereof being the same as those of his first contention.

Respondent has taken the position that a "bequest," as that term is used in section 1014(b)(1), must necessarily mean the same as the "bequest" referred to in section 102(a); therefore, our finding that petitioner was not the recipient of a tax-free bequest under section 102(a) should *a fortiori* preclude the applicability of section 1014. Thus, he argues that the time of receipt and holding period in regard to the stock are governed by the normal rules of accounting applicable to cash basis taxpayers, to wit, the date of receipt.

We find it unnecessary to delve into the difficult question whether the term "bequest" can or should be given a different meaning for purposes of determining basis under section 1014(b)(1). Compare *Helvering* v. *Stockholms Enskilda Bank*, 293 U.S. 84 (1934); *Rohmer* v. *Commissioner*, 153 F. 2d 61, 65 (C.A. 2, 1946); *Estate of Robert J. Cuddihy*, 32 T.C. 1171, 1176 (1959). In our opinion, the doctrine of constructive receipt is properly applicable and consequently petitioner should be deemed to have received the Schering stock in 1965, a year not before us.[8]

At the outset, we note that we are not dealing with a cash bequest, in which event the respondent's position that the normal rules applicable to cash basis taxpayers apply would clearly have merit. We are dealing with a provision of a will disposing of specific shares of stock owned by Marguerite at her death.

Under New York law, petitioner is considered to be a specific legatee of the Schering stock and his rights thereto are determined accordingly. *In re Elliott's Estate*, 76 N.Y.S. 2d 755 (N.Y. County Surr. Ct. 1947); *In re Moorhead's Estate*, 65 N.Y.S. 2d 240 (N.Y. County Surr. Ct. 1946); *Matter of Strasenburgh*, 136 Misc. 91, 242

---

[6] See *Mildred E. McDonald*, 2 T.C. 840, 853 (1943), where we did not reach this question.

[7] SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT.

(b) PROPERTY ACQUIRED FROM THE DECEDENT.—For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:

(1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent;

[8] We express no opinion as to what, if any, remedy respondent may have under secs. 1311 through 1314. See also sec. 6501(e)(1)(A).

N.Y. Supp. 453 (Monroe County Surr. Ct. 1928). Title to the stock vested in petitioner as of the date of decedent's death and all dividends declared thereafter belonged to him. *Matter of Security Trust of Rochester*, 221 N.Y. 213, 116 N.E. 1006 (1917) ; *Matter of Utica Trust & Deposit Co.*, 148 App. Div. 525, 133 N.Y. Supp. 145 (3d Dept. 1911). Cf. *Alfred Harrell, Executor*, 20 B.T.A. 103 (1930). He had the right and power to compel delivery of the Schering stock to himself. N.Y. Surrogate's Court Act, sec. 218 ;[9] *Matter of Roth*, 53 Misc. 2d 1066, 281 N.Y.S. 2d 225 (N.Y. County Surr. Ct. 1967) ; *Matter of Schwartz*, 2 Misc. 2d 542, 149 N.Y.S. 2d 638 (Kings County Surr. Ct. 1956). Given the liquidity of the estate, the executors could not have been surcharged for making such delivery prior to the expiration of the period for filing of claims against the estate. *Matter of Hostin*, 33 Misc. 2d 206, 207–208, 223 N.Y.S. 2d 893, 894 (N.Y. County Surr. Ct. 1961). Indeed, the failure of the executors to consent to such a transfer would have been deemed unreasonable, arbitrary, and capricious. *Matter of Schwartz, supra.* Nor did the executors have any responsibility to take possession of the Schering stock in view of the fact that they clearly were not needed to satisfy claims against the estate or expenses of administration. *Matter of Columbia Trust Co.*, 186 App. Div. 377, 174 N.Y. Supp. 576 (1st Dept. 1919). Finally, they could not (and, in fact, did not in this case) receive commissions with respect thereto. N.Y. Surrogate's Court Act, sec. 285; *In re Pearson's Will*, 182 N.Y.S. 2d 129, 131 (Westch. County Surr. Ct. 1958) ; see *Estate of Abraham Werbelovsky*, 11 T.C. 525, 529–530 (1948).

It is well established that income which is subject to a taxpayer's unfettered command and which he is free to enjoy at his own option is taxed to him as income, whether he chooses to enjoy it or not. *Corliss v. Bowers*, 281 U.S. 376 (1930) ; *Oliver G. Willits*, 50 T.C. 602, 612 (1968) ; see *Ralph E. Wilson*, 40 T.C. 543 (1963). Section 1.451–2(a), Income Tax Regs., adds that the doctrine will not be applied where the taxpayer's control over the income is subject to substantial restrictions. Whether the taxpayer has the necessary control over the income is a question of fact. *Avery v. Commissioner*, 292 U.S. 210 (1934) ; *Oliver G. Willits*, 50 T.C. at 613; *Basil F. Basila*, 36 T.C. 111, 116 (1961).

The applicability of this doctrine in this case hinges upon whether the restrictions imposed on petitioner's control over the stock were substantial. In the instant case, it appears that the assets of Marguerite's estate were far in excess of the liabilities. There is no reason in this record why petitioner could not have obtained immediate possession of

---

[9] This section has been replaced by N.Y. Estates, Powers & Trusts Law (McKinney's), sec. 11–1.5, effective Sept. 1, 1967.

the securities. He only had to demand their delivery.[10] The only restriction (if it can be called that) was that he would have to return the stock (or its equivalent) if it were necessary to use it to pay any debts of the estate. This was, at best, a condition subsequent (see *Matter of Casper*, 161 Misc. 461, 463, 292 N.Y. Supp. 415, 418–419 (Westch. County Surr. Ct. 1936)) and, under the circumstances, a very remote one, to say the least. In short, petitioner must be deemed to have received the Schering stock on July 24, 1965; his basis is its fair market value at that time, and his holding period for determining his gain on the subsequent sale thereof must also start on that date.

Petitioner's final argument concerns the applicability of section 1301. Under section 232(g)(2) of Pub. L. 88–272, petitioner seeks to invoke the provision of section 1301 prior to its amendment in the Revenue Act of 1964. One of the requirements of section 1301 (a)(3) as it then read was that the taxpayer receive not less than 80 percent of the income attributable to the services performed over the spreadback years in one taxable year. In the instant case, he received a little over 73 percent of the total compensation received in 1965 and a little less than 27 percent in 1966; clearly, income averaging is not available to petitioner.

To reflect our findings herein,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

———

QUEALY, *J.*, dissenting: Section 102(a) exempts from tax, property acquired by bequest. It cannot be disputed that under New York law the securities and cash which the majority would tax as income to the petitioner were acquired by the petitioner by bequest pursuant to the will of Marguerite K. Boyce. The Surrogate's Court so held when the residuary legatee sought to compel the petitioner to qualify as a claimant against the estate.

The bequest was made in fulfillment of an agreement whereby petitioner was to render to the decedent such legal services as the decedent might require during her lifetime. It was, nevertheless, the voluntary act of the decedent. The petitioner's right to the bequest was not conditioned upon his ever having performed any services for the decedent, and there is no evidence that the decedent ever required any services other than the periodic updating of her will.

In the classical will, bequests were made to persons who had served the testator "in consideration of long and faithful service." The courts have never looked behind the will to determine the consideration for

———

[10] In his letter of Oct. 1, 1965, petitioner recommended the immediate delivery of the Schering stock to him.

such a bequest. As the law has been interpreted for these many years, the term "bequest" in section 102(a) has not been restricted so as to exclude bequests made on account of some consideration flowing from the beneficiary to the decedent.

In *United States* v. *Merriam*, 263 U.S. 179 (1923), the Supreme Court held that a bequest need not be gratuitous in order to be exempt from income tax. See also *Bank of New York* v. *Helvering*, 132 F. 2d 733 (C.A. 2, 1943).

Following the *Merriam* decision, the courts have been called upon from time to time to decide whether an amount received in satisfaction of the breach of an agreement on the part of the decedent to make a bequest might nevertheless be treated in the same manner as if the bequest had been made by the decedent. *Cotnam* v. *Commissioner*, 263 F. 2d 119 (C.A. 5, 1959), affirming on this issue 28 T.C. 947 (1957); *Joseph M. Mariani*, 54 T.C. 135 (1970); *John Davies*, 23 T.C. 524 (1954); *Mildred E. McDonald*, 2 T.C. 840 (1943); *Cole L. Blease*, 16 B.T.A. 972 (1929); *Cohen* v. *United States*, 241 F. Supp. 740 (E.D. Mich. 1965). The question presented for decision in those cases was whether what was received by the claimant should be exempt from tax on the assumption that if the decedent had in fact bequeathed property to the claimant, as the decedent had agreed to do, it would have been exempt from tax. That question, in turn, depended upon whether the taxpayer took as a claimant against the estate or as a legatee. If there is no distinction, as the majority has held in this case, there would have been nothing to decide in the cited cases.

There is no precedent for the position of the majority of the Court. On the contrary, although section 102(a) or its counterpart has been a part of the tax laws from the inception of the income tax, the majority can point to no opinion in which a bequest was held to be taxable.

In this case, the Surrogate's Court in an adversary proceeding decided that the petitioner was entitled to the stock and cash bequeathed to him by the decedent as legatee. In substance, the surrogate held that the decedent had provided in her will for an unconditional bequest of cash and stock to the petitioner, albeit such request may have been pursuant to a prior agreement between the decedent and the petitioner. However, since the bequest was unconditional, it was not incumbent upon the petitioner to prove his claim.

Once we accept the fact that the petitioner received the property by bequest, section 102(a) applies. It is not a matter of looking behind the bequest, in order to ascertain the testatrix's motives, to prevent tax avoidance. As a practical matter, if we look to the corollary effect upon the tax liability of the *Estate of Marguerite K. Boyce*, also decided this day, the decision of the majority results in a loss of

revenue. What is involved is whether, at this late date, the courts should look behind the will of a decedent to ascertain whether a specific bequest was supported by some consideration. Regardless of consideration, a bequest by will is a voluntary act, not subject to contract. I find no reason for disregarding the literal application of the statute exempting such bequests from tax.