PRISCILLA HANSEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hansen v. Commissioner
Docket No. 240-69.
United States Tax Court
T.C. Memo 1974-12; 1974 Tax Ct. Memo LEXIS 306; 33 T.C.M. (CCH) 43; T.C.M. (RIA) 74012; January 22, 1974, Filed. Joel Kamens, for the petitioner.
Edward DeFranceschi, for the respondent. TIETJENS
MEMORANDUM OPINION
TIETJENS, Judge: The Commissioner determined a deficiency of $33,211.33 in petitioner's income tax for 1965. This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts which we deem necessary for decision will be referred to below. 2 The sole question for decision [1] is whether $150,000 received by petitioner in settlement of a suit for compensation for services rendered a deceased companion should be excluded from gross income under section 102, Internal Revenue Code of 1954. [2] *307 Petitioner resided in Medfield, Massachusetts, at the time she filed her petition in this proceeding. She filed her 1965 Federal income tax return with the district director of internal revenue, Boston, Massachusetts.
William C. Smith (hereafter Smith) died on April 23, 1964. Petitioner was not related to Smith by blood or marriage.
On August 12, 1964, petitioner filed a claim against Smith's estate for $350,000 "for services rendered."
On January 4, 1965, suit was entered by petitioner *308 in the Superior Court for Suffolk County, Commonwealth of Massachusetts, against the executors of Smith's estate. Pertinent portions of "Plaintiff's Declaration" in that suit follow: 3 COUNT I
Now comes the plaintiff in the above entitled action and says that she performed valuable and special services for the defendants' testator, William C. Smith, from Nineteen Hundred and Forty-six (1946) up to and including April of Nineteen Hundred and Sixty-four (1964); that said services were rendered at the request of the defendants' testator; that the said testator promised and agreed to fully and adequately compensate the plaintiff for her said services by provision in his will; and the plaintiff says that she relied on the said promise and agreement in performing the said services but that the testator failed to keep his said promise and agreement; and the plaintiff says that she has not been fully or adequately paid or compensated for her said services, all to her great damage as in her writ alleged.
COUNT II
Now comes the plaintiff in the above entitled action and says that the defendants, as they are Executors of the Estate of William C. Smith, are indebted to her in the amount *309 of THREE HUNDRED FIFTY THOUSAND ($350,000) DOLLARS, together with interest, according to the account annexed marked "A".
Account "A" annexed to that Declaration listed an indebtedness of $350,000 for "services rendered to the late William C. Smith from 1946 to April, 1964."
In connection with the suit, petitioner submitted answers to certain interrogatories propounded by the defendant executors. Pertinent portions of those answers follow:
Mr. Smith asked me to do the cleaning in his home and on a daily basis and I agreed to do this. He told me that he would pay me for the work depending upon how much was accomplished during the week.
* * * 4 Mr. Smith told me that he like me very much; that he was happy with the way I was taking care of his home and that he needed me near him as much as possible. He told me he would like to have me come in evenings as well as working in the house during the day and that he wanted me to be his companion. He told me that his family were not close to him; that they didn't help him in any way and that he was very lonesome. He told me that I was the only one close to him and that he was going to make me his heir and beneficiary in his will. *310 I told him that if I had to come to his home evenings that I would be neglecting my family and that my husband would not take kindly to my spending my evenings at his home. Mr. Smith told me that what he would do for me financially would more than compensate for any problems I would have at home and that eventually my family, through me, would benefit greatly from my cooperation with him. I then told him that I would spend as many evenings as I could with him.
* * * I kept his home clean; I washed his clothes; I cooked his meals; I bought clothing and underwear for him; I sat with him evenings and helped him by taking off his shoes, making him comfortable in his chair, listening to him talk, helping him with his medication when he was ill, putting him to bed and watching over him. I waited on him all the time. * * * I told Mr. Smith that because I was giving him so much of my time that I was neglecting my children and that I had to separate from my husband; that I wanted to stop seeing him and try to straighten things out with my husband and devote more time to my children. Mr. Smith told me that I was not to worry about the separation with my husband; that I could hire *311 someone to look after the children, that where I was to be fully compensated for all I was doing for him by being the beneficiary in his will, that 5 in the long run I would gain tremendously. He told me that where he was getting old and didn't know how long he would be president of the East Boston Savings Bank that he needed me more than ever; that he didn't want to give me compensation immediately because he felt that I would then leave him. He told me that he never got married because he didn't find the one he wanted and he then told me that when he did find the one he wanted, she was two generations too late for him. He said that he knew that I was too young to marry him or he would have made arrangements for me to be divorced so that he could marry me. He told me that he wanted to take me to Scotland with him but he was afraid he was too old to go and there would be no enjoyment in the trip for either himself or me. He pleaded with me not to leave him; that it wouldn't be too long before he would leave this earth and I would have sufficient money to do all the things I wanted for my family and myself. * * * From 1959 to the time of his decease in 1964, Mr. Smith was *312 not in good health and I nursed him. I dressed and undressed him; I bought clothes for him; I stayed late evenings to make sure that he was comfortable and able to get around. I soothed him and made sure that his medications were taken on time and that he would have very little to worry about. * * * While he was being removed to the hospital, he told me that I had nothing to worry about; that I had been good and kind to him and took good care of him and that when he died I would be well provided for and be able to live my own life.
In interrogatory 14, the executors asked the petitioner if she had ever been paid for the services she had rendered Smith. She replied, "No." 6 On June 10, 1965, petitioner received $150,000 from Smith's estate and executed a release of the estate and the executors. During 1965, agreement of judgment was executed, assented to by petitioner, and filed with the Superior Court, Suffolk County.
On April 18, 1966, the executors filed with the probate court a notice of compromise, advising the court:
That the said Priscilla M. Hansen rendered personal services to the late William C. Smith from 1946 up to the date of his death, April 1964; that *313 the said Smith had informed Priscilla M. Hansen that he would leave to her his estate for the services that she had rendered to him; that the value of her services was in the amount of Three Hundred Fifty Thousand ($350,000.00) Dollars; that suit was brought by Hansen against the Estate in the Suffolk Superior Court Docket No. 599985.
that it is probable the same can be adjusted by compromise on the following terms: the payment of the amount of One Hundred Fifty Thousand ($150,000.00) Dollars to Priscilla M. Hansen.
On April 21, 1966, the judge of the probate court issued a decree authorizing the executors to compromise petitioner's claim, described in language similar to that of the notice of compromise.
The Commissioner determined that the $150,000 received by petitioner in settlement of the suit represented compensation for services she rendered and must be included in her gross income under section 61. Petitioner asserts that the $150,000 is excludable as an inheritance under section 102. 7 Petitioner's "Declaration" and her answers to interrogatories prepared for her suit against Smith's estate indicate that she sought $350,000 as compensation for services rendered *314 and received $150,000 in settlement of that claim for compensation. The following statement from Joseph M. Mariani, 54 T.C. 135, 137 (1970), answers petitioner's assertion that she may use section 102 to exclude the $150,000 from gross income:
Petitioner's suit was nothing more than a claim against the estate. It was based on an alleged agreement with decedent, petitioner's performance of the agreed services, and the breach of the agreement by the decedent. The money received in settlement of the suit was not acquired by gift, bequest, devise, or inheritance within the provisions of section 102.
See John Davies, 23 T.C. 524, 527 (1954), where this Court said:
She could not and did not rely upon a mere promise of * * * [decedent], unsupported by any consideration, to leave her property by his will, but in each count of her claim mentioned some valuable consideration moving from her to * * * [decedent] for whatever she was claiming from his estate.
See, also, Victor R. Wolder, 58 T.C. 974 (1972).
Neither Lyeth v. Hoey, 305 U.S. 188 (1938), nor Charlotte Keller, 41 B.T.A. 478 (1940), both of which are cited by *315 petitioner, provide support for petitioner's argument. Petitioner was not an heir of Smith and was not a legatee under an earlier 8 will. She received $150,000 in settlement of a suit based on allegations that Smith's estate was "indebted to her" because "she * * * [had] not been fully or adequately paid or compensated for her * * * services." Section 102 cannot remove the amount of that settlement from her gross income.
Decision will be entered for the respondent. Footnotes
1. The Commissioner determined that petitioner received $3,900 alimony income in 1965. In her petition, petitioner alleged that she did not receive that alimony. The issue of alimony is not mentioned in the stipulation of facts, but, in his brief, the Commissioner suggests that petitioner conceded the issue. Since the record contains no evidence concerning alimony and since petitioner does not mention the issue in her brief; Rule 142, Tax Court Rules of Practice↩, requires us to uphold the Commissioner's determination of alimony income even if petitioner has not explicitly conceded the issue.
2. All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated.↩