ERWIN GLASS, ET AL.,[1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Glass v. Commissioner
Docket Nos. 484-77, 485-77, 486-77, 487-77, 488-77, 489-77, 490-77, 491-77.
United States Tax Court
T.C. Memo 1978-206; 1978 Tax Ct. Memo LEXIS 311; 37 T.C.M. (CCH) 876; T.C.M. (RIA) 780206; June 5, 1978, Filed *311 Pursuant to terms of a qualifying sec. 368(a)(1)(B) reorganization additional stock was due petitioners in an amount determined by average stock exchange closing price in December, 1970. Stock delivered in 1971. Held, as of December 31, 1970 petitioners had no legal right to compel delivery of stock and therefore such stock not constructively received in that year. Interest imputed to petitioners under sec. 483 upon receipt of stock therefore taxable in 1971. Marc R. Heller, for the petitioners. Edward G. Lavery, for the respondent. STERRETT
MEMORANDUM OPINION STERRETT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Petitioner
Docket No.
Year
Amount
Erwin Glass
484-77
1971
$11,924.25
Sharon Lee McDowell
(Formerly Sharon Lee
485-77
1971
11,924.25
Glass)
Jerome Dreyfuss and
Iris Dreyfuss
486-77
1971
8,969.00
Milton Cohen and
Norma Cohen
487-77
1971
3,289.00
Robert Pinkert and
Barbara Pinkert
488-77
1971
12,452.00
Lawrence Jaffe and
Carol Jaffe
489-77
1971
755.00
Samuel Quartarone
490-77
1971
746.30
Ray Mitchell and
Betty Mitchell
491-77
1971
2,115.95 Due to concessions by the parties [2] the sole remaining issue for decision is the taxable year in which petitioners must include *312 in their gross income shares of stock, representing imputed interest income under section 483, I.R.C. 1954. This case was submitted under Rule 122 hence all of the facts have been stipulated and are so found. Petitioner Erwin Glass resided in Chicago, Illinois at the time his petition herein was filed. His former spouse, petitioner Sharon Lee McDowell, resided in Vail, Colorado at the time her petition herein was filed. Throughout 1971 Erwin Glass and Sharon Lee McDowell were husband and wife and they filed a joint Federal income tax return for the taxable year 1971. Petitioner Jerome *313 Dreyfuss and Iris Dreyfuss, husband and wife, resided in Flossmoor, Illinois at the time of filing their petition herein. For the taxable year 1971 they filed a joint Federal income tax return. Petitioners Milton Cohen and Norma Cohen, husband and wife, resided in Beachwood, Ohio at the time of filing their petition herein. For the 1971 taxable year they filed a joint Federal income tax return. Petitioners Robert Pinkert and Barbara Pinkert, husband and wife, resided in Glencoe, Illinois at the time of filing their petition herein. They filed a joint Federal income tax return for the 1971 taxable year. Petitioners Lawrence Jaffe and Carol Jaffe, husband and wife, resided in Wilmette, Illinois at the time of filing their petition herein. They filed a joint Federal income tax return for the 1971 taxable year. Petitioner Samuel Quartarone, resided in Olympia Fields, Illinois at thetime of filing his petition herein. He filed a Federal income tax return, as a single individual, for the taxable year 1971. Petitioners Ray Mitchell and Betty Mitchell, husband and wife, resided in Nashville, Tennessee at the time of filing their petition herein. For the 1971 taxable year they filed *314 a joint Federal income tax return. Petitioners Sharon Lee McDowell, Iris Dreyfuss, Norma Cohen, Barbara Pinkert, Carol Jaffe and Betty Mitchell are parties to this case solely as a result of their having filed joint Federal income tax returns with their husbands in 1971. Therefore, for convenience, the male petitioners will hereinafter be referred to as petitioners. Prior to December 31, 1968 petitioners' stock port-folios included common stock in the following corporations: Milton Cohen
100 shares of Steel Coils, Incorporated
1,000 shares of Cox Metal Processing Company
Samuel Quartarone
2,500 shares of Cox Metal Processing Company
Ray Mitchell
250 shares of Mitchell Steel, Incorporated
Robert Pinkert
86 shares of Clearing Steel, Incorporated
Erwin Glass
77 shares of Clearing Steel, Incorporated
Jerome Dreyfuss
63 shares of Clearing Steel, Incorporated
Lawrence Jaffe
9 shares of Clearing Steel, Incorporated
National Industries, Inc. (National), its common stock listed on the New York stock exchange, in 1968 formed four wholly owned subsidiaries. Each subsidiary (hereinafter the Purchasing Corporations) held shares of National common stock. Steel Coils, Incorporated, Cox Metal Processing Company, *315 Mitchell Steel, Incorporated, and Clearing Steel, Incorporated (hereinafter the Selling Corporations), each entered into a separate but similar written agreement with a different Purchasing Corporation. These agreements were each dated December 31, 1968 and entitled "JOINT AGREEMENT AND PLAN OF MERGER." They each provided in pertinent part as follows: I. INTRODUCTION. * * *
1.4 Action by Boards of Directors. The Boards of Directors of the Constituent Corporations [i.e.,the Purchasing Corporation and the Selling Corporation which were parties to the particular contract] deem it advisable and generally to the benefit of such corporation and their respective shareholders that Purchasing Corp. merge Selling Corp. into Purchasing Corp., and that Selling Corp. be merged into Purchasing Corp. pursuant to and in accordance with the terms and conditions of this Agreement. 1.5 Agreement and Plan to Merge.In consideration of the premises, and of the mutual agreements, provisions and covenants herein contained, the Constitutent Corporations and their respective Boards of Directors hereby agree that Purchasing Corp. shall merge Selling Corp. into itself, and that Selling Corp. shall be merged *316 into Purchasing Corp., effective as of the Effective Date, and hereby prescribe the terms and conditions of the merger, the mode of carrying the merger into effect and the manner and basis of converting the shares of Selling Corp. into shares of National. II. NAME OF SURVIVING CORPORATION; CERTIFICATE OF INCORPORATION; BY-LAWS; DIRECTORS; OFFICERS 2.1. Name of Surviving Corporation. The name of the corporation which shall survive the merger is, and from and after the Effective Date shall be, changed to [the name of the Selling Corporation] a Delaware corporation (the "Surviving Corporation"). 2.2. Certificate of Incorporation. The Certificate of Incorporation or Purchasing Corp., as in effect immediately prior to the Effective Date, shall from and after the Effective Date be and remain the Certificate of Incorporation of the Surviving Corporation until changed or amended as provided by law, except as provided in Section 2.1 hereof. 2.3. By-Laws of Surviving Corporation . The By-Laws of Purchasing Corp., as in effect on the Effective Date, shall from and after the Effective Date be and remain the By-laws of the Surviving Corporation until they shall have been duly changed *317 or amended. 2.4. Directors of Surviving Corporation. The directors of Purchasing Corp., in office on the Effective Date, shall, from and after the Effective Date, be and remain the directors of the Surviving Corporation until their successors are elected in accordance with the Certificate of Incorporation and By-Laws of the Surviving Corporation and shall have duly qualified. 2.5. Officers of Surviving Corporation. The officers of Purchasing Corp., in office on the Effective Date, shall, from and after the Effective Date, be and remain the officers of the Surviving Corporation and shall continue to hold the offices in the Surviving Corporation which they held in Purchasing Corp. until their successors are elected or appointed in accordance with the Certificate of Incorporation and By-Laws of the Surviving Corporation and shall have duly qualified. III. MANNER AND BASIS OF CONVERTING OR EXCHANGING SHARES
3.1. Shares to be Delivered to Holders of Selling Corp. Common Shares. (a) Each Selling Corp. Common Share outstanding on the Effective Date (except any shares owned on the Effective Date by Selling Corp.) shall automatically and by virtue of the merger be converted into that *318 number of voting shares of Common Stock, par value $1.00 per share, of National ("National Common Stock") which is [computed under a formula based upon the prior earnings per share of outstanding common stock of the Selling Corporation]. (b) Surrender and Exchange of Selling Corp. Common Shares. On the Effective Date, each holder… of an outstanding certificate or certificates theretofore representing shares of Selling Corp. Common Shares shall surrender such certificate or certificates to Purchasing Corp., and shall receive on the Effective Date in exchange a certificate or certificates representing the number of shares of National Common Stock into which the Selling Corp.'s Common Shares theretofore represented by such surrendered certificate or certificates shall have been converted. (c) Status of Shares After Effective Date. Until surrendered and exchanged, the outstanding certificates theretofore representing Selling Corp. Common Shares shall be deemed for all purposes to represent the number of whole shares of National Common Stock into which the Selling Corp. Common Shares theretofore represented thereby, shall have been converted in accordance with subparagraph (a) hereof. *319 (d) Fractional Interests. No fractional shares of National Common Stock and no scrip certificates therefor, shall be issued to represent any fractional share interests in shares of National Common Stock, such fractions being rounded down to the nearest whole share. * * *
(f) Contingent Additional Shares of National Common Stock. If, during the month of December, 1970, the average price, as hereinafter defined, of the shares of National Common Stock (appropriately adjusted for stock splits, combinations, reclassifications, recapitalizations, and the like, or stock dividends, subsequent to the Effective Date) is less than $25.00 per share, Purchasing Corp. shall by March 1, 1971 cause to be issued and delivered to shareholders of Selling Corp. as their interests appear sufficient additional shares of National Common Stock to make up the difference between such average price and $25.00 for each share of National Common Stock received pursuant to this Agreement and still owned as of December 31, 1970 by the shareholders of Selling Corp. The average price shall be the average of the closing prices (or if during any day there shall be no sales, then the mean of the closing bid and asked *320 prices) of National Common Stock on the New York Stock Exchange for those days on which such Exchange is open for trading during the month of December, 1970. Provided however, that the number of such contingent additional shares of National Common Stock which may be issued pursuant to this Section 3.1(f) shall not exceed in the aggregate the number of shares of National Common Stock delivered on the Effective Date (after appropriate adjustments, in accordance with generally accepted accounting principals, for any stocksplits, combinations, reclassifications, recapitalizations or stock dividends in regard to shares of National Common Stock after the date hereof). The above written agreements were carried out according to their terms and petitioners became stockholders of National prior to June 30, 1969. The transaction constituted section 368(a)(1)(B) reorganizations. During the month of December, 1970, the average price of National common stock, computed in accordance with paragraph 3.1.(f) of the agreements, was less than $25.00 per share. Therefore, additional shares of National common stock were issued to petitioners. Certificates for the additional shares were issued and physically *321 received by petitioners during the first two months of 1971. The number of National common shares actually received after 1969 by petitioners, their fair market value at date of issue and the amounts of unstated interest income determined by respondent are as follows: Interest Income
Number of
Fair Market
Per Statutory Petitioner
Shares Received
Value of Shares
Notices [3]
Erwin Glass
28,967
$224,494.25
$21,114.00
Jerome Dreyfuss
23,699
183,667.25
17,273.94
Milton Cohen
8,147
63,139.25
5,938.00
Robert Pinkert
32,252
249,953.00
23,508.00
Lawrence Jaffe
3,386
26,241.50
2,468.00
Samuel Quartarone
2,056
15,934.00
1,498.60
Ray Mitchell
5,962
46,205.50
4,345.64
The parties on brief agree that section 483 is applicable to the contingent additional shares of National common stock delivered to petitioners under Article III, section 3.1.(f) of the joint agreements and plans of merger.See Cocker v. Commissioner,68 T.C. 544 (1977) and the cases cited therein. Therefore the sole issue is the year of includibility in gross income of said *322 imputed interest income. Respondent contends that 1971, the year National delivered its shares to petitioners, is the correct year of taxability while petitioners argue for 1970, the year they allegedly constructively received the income. [4]
Moreover as the parties correctly state on brief the key inquiry herein is whether or not petitioners had the National stock readily available to them in 1970, i.e., was it subject to their "unfettered command." Corliss v. Bowers,281 U.S. 376, 378 (1930); Wolder v. Commissioner,493 F.2d 608, 612-613 (2nd Cir. 1974), affg. and revg. in part 58 T.C. 974, 982 (1972). Additionally section 1.451-2(a), Income Tax Regs., provides as follows: Sec. 1.451-2. Constructive receipt of income. (a) General rule. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart *323 for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Thus, if a corporation credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt. Whether the taxpayer has the necessary control is a question of fact. Avery v. Commissioner,292 U.S. 210, 215 (1934). Petitioners contend that as of December 31, 1970, pursuant to the merger agreement, they had an inherent ownership interest in the contingent National shares. They possessed an unrestricted legal right to demand payment on December 31, 1970 [5] *324 and physical delivery in 1971 was only for the convenience of National. After careful consideration of the record and the well established case law in the constructive receipt area, we agree with respondent and hold that petitioners did not possess ownership rights to the stock in 1970 nor a legal right to demand and receive payment in 1970. Under the agreement, they may not have been able to determine, prior to January 1, 1971, whether Article III, section 3.1.(f) would be applicable. Further, section 3.1.(f) gave National until March 1, 1971, to deliver any additional stock due under that provision. The petitioners cannot be deemed to have constructively received the stock in 1970 when they had no legal right to compel its delivery in that year.It seems beyond peradventure that, if a dividend check dated December 31st but not received until the subsequent year is not income in the earlier year, the stock in issue cannot be held received in 1970. Averyv. Commissioner,supra. *325 Therefore, the section 483 imputed interest to petitioners must be included in petitioners' 1971 taxable year. Decisions will be entered under Rule 155 in docket Nos. 484-77, 485-77, and 489-77. Decisions will be entered for the Respondent in docket Nos. 486-77, 487-77, 488-77 490-77, and 491-77. Footnotes
1. Cases of the following petitioners are consolidated herewith: Erwin Glass, docket No. 484-77; Sharon Lee McDowell (formerly Sharon Lee Glass), docket No. 485-77; Jerome Dreyfuss and Iris Dreyfuss, docket No. 486-77; Milton Cohen and Norma Cohen, docket No. 487-77; Robert Pinkert and Barbara Pinkert, docket No. 488-77; Lawrence Jaffe and Carol Jaffe, docket No. 489-77; Samuel Quartarone, docket No. 490-77; and Ray Mitchell and Betty Mitchell, docket No. 491-77.↩
2. The parties in docket Nos. 484-77 and 485-77 agree that petitioners are entitled to a charitable contribution deduction in the amount of $35 in addition to the contribution deduction allowed by respondent in the statutory notice of deficiency. Also they agree that respondent did not err in determining the amount of interest expense deductible by petitioner in the 1971 taxable year. Moreover the parties in docket No. 489-77 agree that petitioners are entitled to a sales tax deduction in the total amount of $512 in lieu of the $427 deduction allowed by respondent in his statutory notice of deficiency.↩
3. The parties agree that, if petitioners are considered to have received interest income in 1971 pursuant to sec. 483↩, respondent has correctly computed the amounts thereof in his statutory notices.
4. Although the record does not so indicate, it appears that sec. 6501 precludes assessment of any tax for the 1970 taxable year. Moreover, based upon petitioners' argument that they constructively received the income it is apparent that they filed their returns on the cash basis.↩
5. After this case was submitted, petitioners attached two documents to their opening brief indicating that, on National's December 31, 1970 financial statement, it provided for issuance of the contingent shares to petitioners. Assuming, arguendo,↩ that these documents are part of the record, which they are not, the fact that National accrued and provided on its financials for the issuance of said contingent shares by no means proves that petitioners had the right to demand payment as of December 31, 1970.