JESSE A. MILLER AND SIGNA H. MILLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 38309-85.
United States Tax Court
T.C. Memo 1987-271; 1987 Tax Ct. Memo LEXIS 271; 53 T.C.M. (CCH) 962; T.C.M. (RIA) 87271; June 2, 1987. *271 Petitioners and M entered into a written agreement whereby M agreed to leave her residence and certain furnishings to petitioners in her will, provided they would live with her and perform certain services for her for the remainder of her life. Petitioners carried out the agreement and decedent devised her residence and the furnishings to them. Held: The fair market value of the residence and furnishings is taxable to petitioners in the year of decedent's death as compensation for services rendered under sec. 61, I.R.C. 1954. Gordon A. Golob, for the petitioners. Larry N. Johnson, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $90,706 in petitioners' Federal income tax for 1980. The issue for our determination is whether real property and furnishings petitioners received under a will constituted compensation for services taxable as income under section 61[1] or property acquired by gift, bequest, devise, or inheritance excludable from gross income under section 102(a). [2] *272 FINDINGS OF FACT Petitioners Jesse A. Miller (Jesse) and Signa H. Miller (Signa) resided in Puyallup, Washington, at the time their petition was filed. Petitioners timely filed their joint Federal income tax return for 1980. Jesse grew up as an orphan and lived in a boys' home. Until Jesse was 21 years old, his guardian was Jack McLeod. Jack McLeod and his wife Mamie (Mrs. McLeod) resided, prior to their deaths, in their home at 603 D Street, Tacoma, Washington (hereinafter referred to as the McLeod residence). Although petitioners were not related to the McLeods, theirs was a close friendship. From 1940 when Jesse and Signa were married until 1956 when Jack McLeod died, the couples spent holidays and had *273 weekly dinners together. In 1956, after her husband died, Mrs. McLeod suffered a series of strokes which resulted in paralysis. From that time until her death in 1980, Mrs. McLeod was unable to walk and required constant nursing care. In 1957, at Mrs. McLeod's request, petitioners moved into the McLeod residence to help her manage and care for the residence and to assist her with her financial and personal affairs. Petitioners continued to live with Mrs. McLeod until her death in 1980. On May 19, 1959, Mrs. McLeod and petitioners entered into a written agreement (hereinafter referred to as the agreement) which provided as follows: MEMORANDUM OF AGREEMENT made this 19 day of May, 1959, by and between Mamie W. McLeod, 603 North D Street, Tacoma, Washington, hereinafter designated as Mrs. McLeod, and Jesse A. Miller and Signa H. Miller, his wife, hereinafter designated as Millers, in consideration of the promises made herein by one to the other, The Millers agree to occupy, enjoy and use the home of Mrs. McLeod at No. 603 North D Street, Tacoma, Washington, with her for a term commencing at the date hereof and to continue during the natural life of Mrs. McLeod, and the Millers further *274 agree to render faithful services in the care of the home and the furnishings thereof, and in addition thereto, Jesse A. Miller agrees to keep her books of account, deposit her receipts at the bank, clip her coupons on her bonds and render such other business assistance as Mrs. McLeod requests during the occupancy of her home by the Millers without any additional consideration therefor. Mrs. McLeod agrees that in event the Millers shall so remain with her as aforesaid during her natural life, she will give to the Millers by her Last Will and Testament the McLeod home at 603 North D Street, Tacoma, Washington, with the household furniture therein, except the piano and several selected pieces that she might dispose of by gift to others. It is fully understood by the parties to this agreement that Mrs. McLeod requires the services of nurses, who shall have the use of the kitchen and its facilities for the preparation of her meals and for themselves, and that all foodstuffs for the McLeod household shall be procured by the Millers and Mrs. McLeod agrees to reimburse the Millers for the food used by her and her nurses; it is agreed that Mrs. McLeod shall pay to the Millers the sum of One *275 Hundred Dollars ($100.00) a month for everything furnished and done for her. It is further understood and agreed that Mrs. McLeod will pay all utilities bills of her home, and also the gardeners and any extra housekeeping help. IN WITNESS WHEREOF, the parties to this Agreement in duplicate have set their hands and seals this 19 day of May, 1959. The agreement was a binding obligation between the parties, representing a bona fide and enforceable contract for full and adequate consideration in money's worth. Petitioners fully performed the obligations under the agreement. They lived with Mrs. McLeod continuously from the date of the agreement until her death in 1980 and provided various services to her as contemplated in the agreement. The services provided by petitioners under the agreement included: hiring and firing nurses and other employees and negotiating their wages; paying bills; purchasing groceries for the household and preparing meals; keeping Mrs. McLeod's books of account and arranging for the preparation of her tax returns; clipping coupons from Mrs. McLeod's bonds; purchasing and selling securities and investing Mrs. McLeod's assets through a broker; and rendering such *276 other business assistance that Mrs. McLeod requested. In accordance with the agreement, Mrs. McLeod paid petitioners $100 per month, which was reported by petitioners as income on their tax returns. Petitioners also received compensation for their services as Mrs. McLeod's guardian which they reported as income on their income tax returns. Mrs. McLeod died on June 11, 1980, and her last will and testament dated July 12, 1966, and codicil thereto were duly admitted to probate. Mrs. McLeod's will provided in pertinent part: THIRD: I direct that my Executor pay all of my just debts, funeral and last illness expenses, costs of administration, together with any and all inheritance, estate, succession, gift or other taxes out of the residue of my estate. It is my will and direction that all pecuniary and specific legatees and devisees hereinafter named shall receive their bequest or devise without any reduction or contribution for taxes. FOURTH: * * * (24) By written agreement of May 19, 1959, between myself and JESSE A. MILLER and SIGNA H. MILLER, husband and wife, I am required to devise and bequeath to them for services rendered, my home located at 603 North D Street, Tacoma, Washington, *277 and certain household furniture. If said agreement is valid and binding at the date of my death, in order to comply with said agreement, I do hereby give, devise and bequeath to JESSE A. MILLER and SIGNA H. MILLER, jointly or to the survivor thereof if either should predecease me, my home located at 603 North D Street, Tacoma, Washington, more particularly described as follows, to-wit: Lots 9, 10, 11 and 12, Block 3607, Map of New Tacoma, Pierce County, Washington together with the household furniture located therein, excepting therefrom such items as I have previously disposed of or otherwise provided for in this My Last Will and Testament. If said written agreement of May 19, 1959, is invalid or unenforceable, I direct that said above described real property and my household furniture located in my home at 603 North D Street, Tacoma, Washington, be considered a part of the residue of my estate and disposed of under the residuary provisions of this Will. (25) To JESSE A. MILLER and SIGNA H. MILLER, his wife, jointly or to the survivor thereof, if either should predecease me, the sum of Twenty Five Thousand Dollars ($25,000.00). This gift is made in recognition of the many kindnesses *278 in caring for me and for supervising my investments. Provided however, should JESSE A. MILLER or SIGNA H. MILLER, separately or jointly file any objections to the probate of my estate or the distribution thereof based in any way upon the written agreement between us of May 19, 1959, I withdraw and render null and void the above $25,000.00 bequest. On October 10, 1980, petitioners filed in the Superior Court for the State of Washington, Pierce County (superior court), a creditor's claim for the McLeod residence and the household furniture, except those items specifically bequeathed in Mrs. McLeod's will. The claim was filed for the purpose of facilitating the immediate transfer of the properties to petitioners pending the sale of the McLeod residence. The creditor's claim was approved by the superior court on October 16, 1980, and the house and furnishings were transferred to petitioners. The McLeod residence and furnishings were included in Mrs. McLeod's gross estate for State inheritance tax purposes and, in the inheritance tax return filed for the state, the value of the property was deducted as a debt "owing by decedent at the date of death" pursuant to Wash. Rev. Code Ann. sec. 83.04.013 *279 (1981). [3] The deduction was disallowed by the State taxing authority and the estate appealed the determination to the superior court. On January 3, 1984, the superior court found as a fact that the agreement constituted a valid, enforceable, and binding contract to make a will, which was supported by full and adequate consideration in money's worth and fully performed by the contracting parties. The court held, however, that a contract to make a will does not constitute a debt owed by decedent within the meaning of Wash. Rev. Code. Ann. sec. 83.04.013 (1981), and because the transfer of the McLeod residence and furnishings was made pursuant to a contract to make a will, no deduction under that section *280 is allowed. [4]
The decision of the superior court was reversed by the Supreme Court of Washington in Matter of Estate of McLeod,105 Wash.2d 809, 719 P.2d 88 (1986). The supreme court rejected the lower court's legal analysis and distinguished a taxable transfer from a deductible transfer on the basis of whether the transfer was gratuitous or nongratuitous. The court did not disturb the superior court's finding that the agreement was a binding obligation supported by adequate and full consideration, and held that to the extent the transfer of property to petitioners pursuant to the agreement represented nongratuitous compensation for services rendered, the value of the property transferred was deductible from State inheritance taxes under Wash. Rev. Code Ann. sec. 83.04.013 (1981). 719 P.2d at 90-91. Petitioners did not report as income on their joint Federal income tax return for 1980 the value of the McLeod residence and furnishings they received from Mrs. McLeod's estate. The fair market *281 value of the residence and furnishings on the date of Mrs. McLeod's death has been stipulated by the parties as follows: Residence
$175,000
Household furnishings
88,600
Total value
$263,600
OPINION Petitioners contend that they received the McLeod residence and the household furnishings under article Fourth of Mrs. McLeod's will as a bequest specifically excludable from income under section 102(a). [5] Respondent argues that the property received by petitioners constituted compensation for services taxable as income under section 61(a)(1). [6] We agree with respondent. The parties have stipulated that the agreement between petitioners and Mrs. McLeod was a binding obligation, representing a bona fide and enforceable contract for full and *282 adequate consideration in money's worth under the laws of the State of Washington. Washington law does, of course, control as to the extent of petitioners' legal right to the property they received. It does not control, however, as to the characterization of the property as income or a bequest for Federal income tax purposes; that characterization is one of Federal law. [7]United States v. Mitchell,403 U.S. 190, 197 (1971); Morgan v. Commissioner,309 U.S. 78, 80 (1940); Wolder v. Commissioner,58 T.C. 974, 979 (1972), affd. in part and revd. and remanded in part 493 F.2d 608 (2d Cir. 1974). In the Wolder case, involving similar facts, this Court held that cash and stock received by the taxpayer under a will constituted compensation for services rendered where the taxpayer, an attorney, entered into a written agreement to render the decedent legal services for the remainder of her life without charge in consideration for her promise to bequeath *283 to the taxpayer certain stocks and securities. The taxpayer rendered the necessary legal services and received, pursuant to provisions in decedent's will, certain stocks and cash in lieu of stock. The taxpayer argued that the property received pursuant to decedent's will was excludable from income as a bequest under section 102(a). According to the Wolder Court, whether such payments constituted a bequest or compensation for services depended on the intention of the parties to the agreement and their performance in accordance with those intentions. 58 T.C. at 979, affd. on this issue 493 F.2d at 612. See Commissioner v. Duberstein,363 U.S. 278, 286 (1960). Applying that standard, the Court held that, as the intentions of the parties were clearly expressed in their written agreement and their obligations fully performed, the payments to the taxpayer (the attorney) from the estate constituted compensation for services rendered includable in the taxpayer's income under section 61(a)(1). 58 T.C. at 979-980; see also Braddock v. United States,434 F.2d 631, 632 (9th Cir. 1970). [8] The Court so held, even though the provisions in the decedent's will did not refer to the written agreement *284 or mention the services rendered by the taxpayer, as is the case here. In the instant case, there is no question but that, under the agreement, petitioners undertook to render various services to Mrs. McLeod and that she undertook to pay them by way of a specific provision in her will. Further, there is no question that these undertakings were implemented. The intentions of the parties, as expressed in the agreement, and their performance in accordance with those stated intentions is clear. Indeed, *285 Mrs. McLeod's will specifically referred to the agreement providing that petitioners receive the McLeod residence and furnishings. The will states: "By written agreement * * *, I am required to devise and bequeath to them for services rendered, my home * * *, and certain household furniture." (Emphasis added.) Mrs. McLeod further provided that if the agreement were not valid and enforceable at her death, the property was to be distributed under the residuary provisions in her will. Moreover, Mrs. McLeod provided in her will for a $25,000 bequest to petitioners "in recognition of the many kindnesses in caring for me and for supervising my investments" entirely separate and distinct from the will provision devoted to the house and furnishings. [9]
The long and short of it is that petitioners and Mrs. McLeod made a bargain and the bargain was kept. Petitioners agreed to be paid for their many services by way of Mrs. McLeod's will and this is exactly what occurred. The McLeod residence and furnishings constitute compensation for services rendered taxable as *286 income under section 61(a)(1). [10]
To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
2. Respondent states that, in order to protect the revenue, he has taken the alternative position with respect to the estate tax return that the value of the residence and the furnishings received by petitioners is not deductible as a claim against the estate pursuant to sec. 2053(a)(3). Respondent further states that he intends to recommend concession of the sec. 2053(a)(3) issue which is presently before the U.S. Claims Court and being held in abeyance pending the decision in this case.
3. Wash. Rev. Code Ann. sec. 83.04.013 (1981) provided in pertinent part as follows: The following shall be allowed as deductions from the gross value of the property passing: (1) All debts owing by decedent at the date of death: Provided, That debts founded upon a promise or agreement shall be allowable only to the extent that they were contracted, bona fide, and for full and adequate consideration in money or money's worth; * * * This section has been repealed effective Jan. 1, 1982.↩
4. The appearance of petitioners' attorney at the superior court proceeding was found by that court not to constitute an objection by petitioners to the probate or distribution of Mrs. McLeod's will.↩
5. SEC. 102. GIFTS AND INHERITANCES. (a) General Rule. -- Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance. ↩
6. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. -- Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items; (1) Compensation for services, including fees, commissions, and similar items; * * *↩
7. The Washington supreme court's decision that the transfer of the McLeod residence and furnishings was nongratuitous at least to the extent it was made for services rendered, is not, as respondent argues, determinative of the issue in this case.↩
8. Accord Cotnam v. Commissioner,28 T.C. 947 (1957), affd. on this issue 263 F.2d 119 (5th Cir. 1959); Mariani v. Commissioner,54 T.C. 135 (1970); Davies v. Commissioner,23 T.C. 524 (1954). While it is true that in each of these cases the testator did not fulfill his contractual obligation to provide in his will for payment of services rendered, forcing the taxpayer to litigate his claim against the estate, the court of appeals in Wolder refused to distinguish these cases from one (such as Wolder and the instant case) in which the terms of the contract were carried out by both parties. Wolder v. Commissioner,493 F.2d 608, 612 (2d Cir. 1974), affg. on this issue 58 T.C. 974, 980↩ (1972).
9. That the $25,000 payment is excludable from petitioners' income as a bequest under sec. 102(a) is not challenged by respondent.↩
10. Petitioners contend that article Third of Mrs. McLeod's will demonstrates that her intent in transferring the house and furnishings was not to encumber the petitioners with any tax. Her will provides in pertinent part: It is my will and direction that all pecuniary and specific legatees and devisees hereinafter named shall receive their bequest or devise without any reduction or contribution for taxes. While such a clause will not be determinative as to what constitutes gross income for Federal income tax purposes, it may be that petitioners are entitled to contribution from the estate on that basis. We express no opinion on that question.↩