ESTATE OF OGDEN D. DOOLEY, DECEASED, WILLIE JO DOOLEY, EXECUTRIX, AND WILLIE JO DOOLEY, SURVIVING WIFE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Estate of Dooley v. Commissioner
Docket Nos. 11131-88, 23026-88, 23027-88
United States Tax Court
T.C. Memo 1992-557; 1992 Tax Ct. Memo LEXIS 577; 64 T.C.M. (CCH) 824; September 22, 1992, Filed *577 Respondent (R) determined over $ 8 million of deficiencies in, and additions to, the income, estate, and gift taxes of petitioners -- Mrs. Dooley and the estate of her deceased husband. Prior to trial, R conceded most of the factual issues and settled the three cases for a total of $ 143,787 in gift tax. Petitioners (Ps) moved for an award of litigation costs pursuant to sec. 7430, I.R.C. 1954, arguing, inter alia, that R was not substantially justified in adhering to her litigating positions on the substantive tax issues. Held: Given the complex and convoluted nature of these cases, R was substantially justified in taking protective positions until the ownership and devolvement of the property being valued was clear and petitioners had submitted the necessary documentation to prove their contentions in each case. Held, further: Ps failed to exhaust the administrative remedies available to them with the IRS, a prerequisite to an award of litigation costs. Sec. 7430(b)(1). Held: Ps' motion for litigation costs is denied. For Petitioners: Elwood Cluck. For Respondent: James W. Lessis. DRENNEN
DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge *578 : This matter is before the Court on petitioners' motion for an award of litigation costs and attorney's fees pursuant to section 7430[2] and Rule 231. By three separate notices of deficiency, [3] respondent determined deficiencies in, and additions to, petitioners' income, gift, and estate tax as follows: Docket No. 11131-88 Estate of Ogden D. Dooley, Deceased, Willie Jo Dooley, Executrix, and Willie Jo Dooley, Surviving Wife
Income Tax
Income Tax
Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1981
$  977,147.67
$  48,857.38
[1]
*579 Docket No. 23026-88 Estate of Ogden D. Dooley, Deceased, Willie Jo Dooley, Co-Executrix and C.J. Bitter, Co-executor
Primary Position
Estate Tax
Date of
Estate Tax
Addition to Tax
Death
Deficiency
Sec. 6660
12/16/84
$ 4,782,813
$ 1,434,844
Alternative Position
Gift Tax
Additions to Tax
Gift Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
12/31/83
57,383
$  14,346
$   2,869
[1]
12/31/84
$ 2,117,660
$ 529,415
$ 105,883
[1]
Estate Tax
Date of
Estate Tax
Addition to Tax
Death
Deficiency
Sec. 6660
12/16/84
$ 297,492
$ 50,537
Docket No. 23027-88, Willie *580 Jo Dooley
Gift Tax
Addition to Tax
Year
Deficiency
Sec. 6651(a)(1)
12/31/86
$ 850,449
$ 212,612
On May 24, 1988, a petition was filed in docket No. 11131-88, and on September 9, 1988, petitions were filed in docket Nos. 23026-88 and 23027-88. Respondent filed answers to all of the petitions, and on April 25, 1989, these three cases were consolidated. On May 3, 1991, the parties filed a Stipulation of Settled Issues (hereinafter stipulated settlement) in which they agreed that there were no deficiencies in, or additions to, petitioners' income, gift, or estate taxes as determined, with the exception of $ 143,787 owed by petitioners in gift tax for 1984. Following the settlement, petitioners filed a motion for litigation costs and attorney's fees pursuant to section 7430 and Rule 231. As the parties have settled their disputes with respect to all of the tax deficiencies and additions to tax determined by respondent in these cases, the issues before us pertain only to whether petitioners qualify as the "prevailing party" entitled to an award of reasonable litigation costs under section 7430, and if so, what costs are reasonable. Respondent concedes that petitioners *581 have met one of the prerequisites for an award of litigation costs under section 7430 in that they have substantially prevailed with respect to the amounts in controversy or the most significant issue or set of issues presented. Sec. 7430(c)(2)(A)(ii)(I) and (II). [4] Thus, the remaining issues for decision are: (1) Whether respondent's positions in these cases were substantially justified as required by section 7430(c)(2)(A)(i); (2) whether petitioners meet the net worth requirements for an award of litigation costs as required by section 7430(c)(2)(A)(iii); (3) whether petitioners have exhausted their administrative remedies as required by section 7430(b)(1); (4) whether petitioners have unreasonably protracted the proceedings in these cases within the meaning of section 7430(b)(4), and (5) whether the costs claimed by petitioners are reasonable as required by section 7430(c)(1). *582 FINDINGS OF FACT The following facts are based on the entire record, including the affidavits and exhibits submitted by the parties with respect to this motion for litigation costs, the parties' pleadings, their stipulated settlement, their other motions and supporting documents, as well as our prior opinion, Estate of Bartberger v. Commissioner, T.C. Memo. 1988-21. Ogden D. Dooley (hereinafter either decedent or Dooley) was born in 1906 in Kinney County, Texas, where he resided and maintained his domicile his entire life until he died on December 16, 1984. Decedent was married three times. His first marriage, to Arlene Butler in 1932, produced three children, Patricia, Carole, and Diane, who, at the time of decedent's death, were known as Patricia Dooley Smith, Carole Dooley Kirby, and Diane Dooley Elrod. All three daughters survived decedent. Decedent was divorced from his first wife in about 1938 or 1939. Decedent next married Gladys Fulcher, who died in 1970. No children were born to, or adopted by, the couple. On September 18, 1971, decedent married Willie Jo Bitter (hereinafter either Willie Jo or Mrs. Dooley), the widow of Clarence A. *583 Bitter. Willie Jo had one son by that previous marriage, Clarence J. Bitter (hereinafter C.J. Bitter), and three grandchildren, James Clarence Bitter, David Frederick Bitter, and Elizabeth Bitter Heiligmann. No children were born to, or adopted by, decedent and Willie Jo after their marriage to each other. During their marriage, Willie Jo and decedent lived on a large cattle ranch near Bracketville, Texas (hereinafter Petersen Ranch), where Willie Jo continues to reside. Their marriage continued without interruption until decedent's death. In 1928, Bracketville was the only town in Kinney County, Texas, a ranching community of approximately 1,800 people located near the Mexican border in West Texas. The primary occupation of the community was ranching, and the biggest business in town was Petersen and Company. Petersen and Company was a partnership that owned and conducted a general mercantile business, the motto of which was "supplies from the cradle to the grave". N.P. Petersen owned two of the four partnership shares; R.C. Ballantyne and Adolph A. Bitter (Willie Jo's former father-in-law) each owned one share. N.P. Petersen also owned the Petersen Ranch, which was a 19,300-acre *584 cattle ranch located 7 miles northeast of Bracketville. In 1927, there were no improvements on the ranch except for a fence which ran along a portion of the perimeter. In 1931, N.P. Petersen, being dissatisfied with the operation of the ranch, fired his ranch manager and hired decedent, then known as O.D. "Buster" Dooley, as the new ranch manager. Decedent made many improvements to the Petersen Ranch and operated it as a cattle ranch from 1931 until his death in 1984. In 1935, decedent went to the Petersen and Company office to discuss the ranching business with N.P. Petersen. Present at the meeting, besides Petersen and decedent, were Clarence Bitter, the bookkeeper and general manager of Petersen and Company; Willie Jo, who at that time was married to Clarence Bitter; and R.C. Ballantyne, N.P. Petersen's business partner and adviser. At the meeting, N.P. Petersen told decedent that he approved of the way he was managing the ranch and offered to form a joint venture with decedent for its operation. Under the offer, which decedent orally accepted, decedent was to stop taking a salary and pay half of the operating costs of the ranch and receive half of any profits. If Mr. and *585 Mrs. Petersen and their daughter had sufficient funds during their lives, the Petersen Ranch would become decedent's on the death of the Petersens' daughter, Martha (hereinafter Martha or Mrs. Bartberger), who was the Petersens' only child. When the meeting concluded, Petersen and decedent shook hands but the terms of their oral agreement were never reduced to writing. Estate of Bartberger v. Commissioner, T.C. Memo. 1988-21; see also Estate of Dooley v. Frost National Bank, Appeal No. 04-86-00436-CV (Tex. Ct. App.-San Antonio, October 28, 1987). From 1936 until Martha Bartberger's death in 1981, decedent resided at, and had exclusive possession of, the Petersen Ranch as ranch manager. He made many improvements to the property including a stone ranch house, two tenant houses, equipment and feed storage buildings, branch roads, fencing, and wells. Decedent and N.P. Petersen paid for these improvements jointly, pursuant to the terms of their 1935 oral agreement. In 1949, N.P. Petersen died and devised the Petersen Ranch to his daughter, Martha Bartberger. Estate of Bartberger v. Commissioner, supra.
In 1950, *586 decedent, Martha Bartberger, A.E. Bartberger (Martha's husband), and Martin Petersen (Martha's cousin) entered into a partnership doing business as Petersen Ranch Company. The partnership's purpose was to operate the Petersen Ranch and raise and sell livestock on the ranch. The term of the partnership was 5 years, renewable upon the agreement of the parties. The written partnership agreement was signed by Dooley and recited that Mrs. Bartberger, as the fee simple owner of the Petersen Ranch acreage, would pay real estate taxes but that the partnership would pay taxes on livestock and company property. By separate agreement, Mrs. Bartberger leased the grazing rights on the 19,300 acres comprising the Petersen Ranch to the partnership. During the life of the partnership, decedent had custody and control of the partnership property as ranch manager, and Mrs. Bartberger held title to the real estate and bore the cost of all permanent improvements. The partnership continued until 1962 when Petersen Ranch, Inc., was formed. The partnership was terminated and the corporation succeeded to the partnership's operation of the ranching business. In 1963, Mrs. Bartberger conveyed 12,426.11 *587 acres of the Petersen Ranch to Martin and June Petersen for life, remainder to the Episcopal Church Corporation of West Texas. Between 1950 and 1981, without decedent's express consent or objection, Mrs. Bartberger executed leases of the oil, gas, and mineral rights in the Petersen Ranch property. On March 31, 1981, shortly before her death, Amoco Production Company paid $ 7,309.85 to Mrs. Bartberger for delay rentals for the period April 14, 1981, through April 13, 1982, pursuant to an oil, gas, and mineral lease executed by Mrs. Bartberger. Consideration for these leases was paid to Mrs. Bartberger's personal account. From 1962 until her death in 1981, Mrs. Bartberger leased the grazing rights on 7,346.97 acres of the Petersen Ranch property to Petersen Ranch, Inc. On December 29, 1980, decedent, acting on behalf of Petersen Ranch, Inc., paid $ 18,367.42 to Mrs. Bartberger under the terms of the grazing lease for the period January 1, 1981, through December 31, 1981. In 1979, decedent wanted to make additions and improvements to the ranch house on the Petersen Ranch. He did not, however, want to improve the house until he had received assurances that he would be the owner *588 of the real estate after Martha Bartberger died. Dooley and Willie Jo visited Mrs. Bartberger in her nursing home in San Antonio. They discussed the improvements and additions to the ranch house and Mrs. Bartberger's intentions with respect to the real estate she was then leasing to Petersen Ranch, Inc. Mrs. Bartberger said: "Ogden, you are the only son I have ever had, and you have no worries about the ranch." Mrs. Bartberger died testate on April 10, 1981. Since Mrs. Bartberger had outlived her husband and had no children, she devised the real estate leased to the Petersen Ranch to Dooley, the Bart Ranch to Else Inge Sights, and the residue of her estate to her cousin, Martin Petersen. The expenses and Federal estate taxes of her estate were to be paid out of the residuary estate. However, if the residue was insufficient to pay those expenses, her will stated that the balance was to be borne by Dooley and Sights in proportion to the value of their specific devises as determined for estate tax purposes. Mrs. Bartberger's executor was fully authorized to take possession, lease, mortgage, sell, exchange, or otherwise dispose of any part of her estate, including the Petersen *589 Ranch real estate, for the purpose of discharging any indebtedness of the estate. Mrs. Bartberger's estate filed an estate tax return on which the real estate leased to the Petersen Ranch was valued at $ 1,000, on the ground that Dooley, the sole possessor of the Petersen Ranch, claimed that he was the true owner of the ranch pursuant to his 1935 oral agreement with N.P. Petersen. Dooley and Willie Jo jointly filed a Federal income tax return for 1981 in which they made no disclosure whatsoever with respect to whether the value of the Petersen ranch was includable in their 1981 income or excludable as a bequest under section 102(a). In March 1982, Dooley filed a lawsuit against the independent executor of the Bartberger estate, Frost National Bank of San Antonio, in the 63rd District Court, Kinney County, Texas. At issue was whether the 7,346.97 acres leased to the Petersen Ranch became Dooley's property pursuant to the devise in Mrs. Bartberger's will, and was thus a probate asset of her estate, or pursuant to the alleged 1935 oral contract between Dooley and N.P. Petersen, and was thus a nonprobate asset. In that case, Dooley asserted that he owned the Petersen Ranch pursuant *590 to the 1935 contract in order to prevent the executor from taking possession of the real estate leased to the ranch during the Bartberger estate's administration, and to recover the unearned portion of the grazing lease payment he had made to Mrs. Bartberger on behalf of Petersen Ranch, Inc., as well as the unearned portions of the oil, gas, and mineral leases she had executed. The district court held that title and ownership of the real estate leased to the Petersen Ranch vested in Dooley under Mrs. Bartberger's will, not under any prior contract, and that Mrs. Bartberger's estate owned the real estate leased to the Petersen Ranch, including all the delay rentals received from leases on the ranch. On October 28, 1987, almost 3 years after decedent's death, the district court's decision was affirmed in an unpublished opinion by the Texas Court of Appeals for the Fourth Supreme Judicial District in San Antonio, Texas. Similarly, on January 19, 1988, shortly before the issuance of the deficiency notice in docket No. 11131-88, this Court issued an opinion in Estate of Bartberger v. Commissioner, T.C. Memo. 1988-21, in which we held that Dooley acquired *591 both equitable and legal title to the Petersen Ranch pursuant to the specific devise in Mrs. Bartberger's will, not pursuant to any prior contract, and therefore since Mrs. Bartberger owned the ranch at the moment of her death, the ranch was includable in her estate at its fair market value pursuant to section 2033. Due to complications involving the closing of the Bartberger estate and the computation by the parties in that case under Rule 155, a final decision in Estate of Bartberger v. Commissioner, supra, has not been entered to date. Thus, our holding in that case might still be appealed. [5]
*592 Decedent executed a revocable trust dated September 14, 1983, that purports to convey, inter alia, the Petersen Ranch, the San Jose Ranch, the Mountain Ranch, and the O.D. Dooley Farm (otherwise known as the Pinto Creek Farm) into trust. The trust instrument names Willie Jo Dooley as the trustee and decedent as the trust's sole beneficiary. The revocable trust instrument was recorded in Kinney County, Texas, on May 1, 1984. On December 16, 1983, decedent organized a corporation named O.D. Dooley Ranches, Inc., and conveyed to the corporation the surface estates of the four ranches [6] described as follows: San Jose Ranch
7,999.59 acres
McMullen County, Texas
Petersen Ranch
7,346.97 acres
Kinney County, Texas
Mountain Ranch
2,768.19 acres
Kinney County, Texas
O.D. Dooley Farm
456.00 acres
Kinney County, Texas
18,570.75 acres
In exchange for his conveyance of the surface estates in the four properties to the corporation, all of the stock of O.D. Dooley Ranches, Inc., was initially issued to Ogden Dooley as follows: 10,000 shares class A preferred
$    1.00 par value
10,000 shares class B preferred
$  100.00 par value
10,000 shares common stock
Without par value
*593 Decedent subsequently transferred all of his 10,000 shares of common stock to his relatives. On December 25, 1983, decedent transferred a total of 528 shares of common stock to his stepson and his stepgrandchildren as follows: Date of
Shares of Common
Recipient
Transfer
Stock
of Shares
Transferred
12/25/83
132
C.J. Bitter
(stepson)
12/25/83
132
James C. Bitter
(stepgrandchild)
12/25/83
132
David F. Bitter
(stepgrandchild)
12/25/83
132
Elizabeth Bitter
Heiligmann
(stepgrandchild)
TOTAL 528
On January 2, 1984, decedent transferred a total of 9,472 shares of common stock to his wife, stepson, and stepgrandchildren as follows: Date of
Shares of Common
Recipient
Transfer
Stock
of Shares
Transferred
1/2/84
133
C.J. Bitter
(stepson)
1/2/84
1,576
James C. Bitter
(step-
grandchild)
1/2/84
1,576
David F. Bitter
(step-
grandchild)
1/2/84
1,576
Elizabeth Bitter
Heiligmann
(step-
grandchild)
1/2/84
4,611
Willie Jo Dooley
(wife)
TOTAL 9,472
*594 Dooley died testate on December 16, 1984, survived by his widow, Willie Jo Dooley; his stepson, C. J. Bitter; his stepgrandchildren, James C. Bitter, David F. Bitter, and Elizabeth Bitter Heiligmann; and his three daughters by his prior marriage, Patricia Dooley Smith, Carole Dooley Kirby, and Diane Dooley Elrod. Dooley left two wills, one dated August 7, 1979 (1979 will), and the other dated June 21, 1983 (1983 will). Both documents had been signed by Dooley and at least two witnesses. In the 1979 will, Dooley had purportedly bequeathed $ 10,000 to Carole Kirby; $ 10,000 to Pedro Salas and Albinina Salas Castillo to share jointly; and the San Jose Ranch to Patricia Bennet [7] and Diane Elrod, subject to two separate obligations -- first, to pay $ 125,000 to Willie Jo Dooley, and second, to pay half of the first $ 1,250,000 of decedent's debts, funeral and administrative expenses, and death taxes, if decedent gained possession of the Petersen Ranch. The rest and residue of decedent's estate was bequeathed to his wife, Willie Jo. *595 In the 1983 will, decedent purportedly bequeathed $ 25,000 to his daughter, Carole Kirby; $ 500,000 to be divided equally between his two other daughters, Patricia Bennet and Diane Elrod; and $ 10,000 to Pedro Salas and Albinina Salas Castillo, to share jointly. According to the 1983 will, these general legacies were to be free of reductions for decedent's debts, funeral and administration expenses, and any State and Federal taxes that are imposed by reason of death. Decedent bequeathed the residue of his estate to his wife, Willie Jo. The 1983 will further designated Willie Jo Dooley and Clarence Bitter as the independent executors of the estate. On December 20, 1984, Willie Jo and Clarence Bitter offered the 1983 will for probate in County Court, Kinney County, Texas. However, decedent's three daughters, Carole, Patricia, and Diane, contested the validity of the 1983 will on grounds that their father was suffering from Alzheimer's Disease and other disabling mental ailments and, consequently, was of unsound mind, lacked testamentary capacity, and was acting under the undue influence of Willie Jo at the time he executed the will. [8]
*596 According to the daughters' amended petition, Willie Jo, with the assistance of the family's attorney, Elwood Cluck, was "devising a scheme and conspiracy to trick and defraud the decedent by converting virtually all of the assets of his Estate and more particularly the 8,000 acre San Jose Ranch located in McMullen County, Texas." At the same time, the daughters sought to have the 1979 will probated as the valid last will and testament of decedent. These proceedings, initiated by the daughters, were transferred to the 63rd Judicial District Court of Kinney County, Texas. In January 1985, the daughters filed a second suit in the district court contesting the validity of decedent's December 16, 1983 deed and conveyance of the surface estates in his four ranches to O.D. Dooley Ranches, Inc., on grounds that decedent had lacked contractual capacity and was acting under the undue influence of Willie Jo at the time he executed the deed. [9]
*597 The daughters' will and deed contests were settled by two separate, written agreements. On May 15, 1986, Willie Jo Dooley and the Willie Jo Dooley family, entered into an agreement with Patricia Smith and Carole Kirby whereby Willie Jo Dooley executed and delivered a $ 1 million note to Carole and Patricia in consideration of their agreement to withdraw their opposition to the 1983 will's probate and to further relinquish, transfer, and assign to Willie Jo all of their rights, title, interest, and estates of inheritance in decedent's estate. On May 16, 1986, Willie Jo Dooley and C.J. Bitter, individually and as executors, entered into a second agreement with Diane Elrod whereby Willie Jo Dooley conveyed the south part of the San Jose Ranch to Diane in consideration of a $ 1 million note executed by Diane and her promise to withdraw her opposition to the 1983 will's probate and to relinquish, transfer, and assign all of her rights, title, interest, and estate of inheritance in decedent's estate to Willie Jo. The net effect of the two settlement agreements was to transfer property equivalent in value to the south portion of the San Jose Ranch to the three daughters of Ogden Dooley. *598 Shortly after the settlement agreements were executed, the daughters' lawsuits against decedent's estate contesting the validity of decedent's 1983 will and his conveyance of the ranches to the corporation were nonsuited and dismissed. On July 21, 1986, the 1983 will was admitted to probate as the last will and testament of decedent. On August 27, 1986, Mrs. Dooley and C.J. Bitter were appointed independent co-executors of decedent's estate, replacing Henry Dalrymple, who had been serving as the estate's temporary administrator since his appointment in April 1985 by the 63rd Judicial District Court in Kinney County, Texas. On September 16, 1985 -- prior to settlement of the daughters' claims against the estate and the admission of the 1983 will to probate -- the executors of Dooley's estate, Mrs. Dooley and C. J. Bitter, filed Form 706, United States Estate Tax Return. The return, however, was substantially incomplete when it was filed. In the tax computation section of the return, 17 of the 23 lines were marked "undetermined", including those lines calling for valuation figures for the total gross estate, the adjusted taxable gifts, and the total allowable deductions. In addition, *599 the following property values were undetermined on the return: the value of the class A and class B preferred stock in O.D. Dooley Ranches, Inc., reported on Schedule B as separate property of the decedent; the value of the common stock in O.D. Dooley Ranches, Inc., reported on Schedule G as being transferred by decedent to his relatives in 1983 and 1984; the value of three claims by decedent against the executor of the Estate of Martha Bartberger for various lease payments and performance of a real estate contract; and the value of miscellaneous property reported on Schedule M as passing to Mrs. Dooley in her capacity as decedent's surviving spouse. Although the total amount of the marital deduction was undetermined on the estate tax return, the estate's entitlement to the marital deduction was expressly claimed at the bottom of Schedule M. Finally, on line 23 of the computation section, petitioners claimed that no estate tax was due. Several documents were filed contemporaneously with the incomplete return. These included Form 4768, Application for Extension of Time to File U.S. Estate Tax Return and/or Pay Estate Tax, and two other documents respectively entitled "Statement *600 of Facts and Protective Elections" and "Application for Determination of Estate Taxes and Discharge of Executor Fiduciary from Personal Liability". Form 4768 was dated September 9, 1985, and was signed by Mrs. Dooley as the designated executor. In the form, Mrs. Dooley claimed that the return had been timely filed [10] but requested an extension date to September 16, 1986, within which to pay the estate tax since the amount of tax due was still undetermined. In the Statement of Facts and Protective Elections, Mrs. Dooley claimed that due to four pending lawsuits involving real property of the estate, including the two suits filed by Carole Kirby, it was impossible to determine "the exact nature and extent and value of the assets comprising the Estate of Ogden D. Dooley." Accordingly, Mrs. Dooley reserved the right to amend the estate tax return to conform to the ultimate determination *601 of ownership and value of the property, as well as the amount of the estate's debts and administration expenses as finally adjudicated in the estate's four pending lawsuits. Mrs. Dooley made a protective election, in accordance with section 20.2032A-8(b), Estate Tax Regs., to value certain qualified real property of the estate, in particular the San Jose Ranch, the Mountain Ranch, the Dooley Farm, and the Petersen Ranch, according to its approximate actual use pursuant to section 2032A rather than its fair market value on the applicable valuation date. Mrs. Dooley further stated that if the Secretary found that such real property qualified for such special use valuation, she would file an amended return, [11] any additional information, and the Notice of Election as required by section 20.2032A-8, Estate Tax Regs. Mrs. Dooley also applied for a 12-month extension of time to pay the estate tax determined to be due, pursuant to section 6161, and she protectively *602 elected to further defer the payment of any estate tax deficiency attributable to decedent's interest in a closely held business, pursuant to section 6166. Finally, Mrs. Dooley filed a written request, pursuant to section 2204, that the Secretary determine the amount of any estate tax due and that the designated executors and certain fiduciaries of the decedent be discharged from personal liability once they paid the amount of tax initially determined to be due. The Commissioner initiated an audit of the estate tax return in February 1986. On June 16, 1987, the Commissioner sent petitioners a report of the audit in which the Commissioner asserted a total of $ 8,885,943 in estate tax, gift tax, and additions to tax against the Estate of Ogden D. Dooley and Mrs. Dooley, in her capacities as both the executor and the surviving spouse. Shortly after receiving the audit report, petitioners notified the I.R.S. that they could not accept the findings of the examining agent and requested that a statutory notice of deficiency be immediately issued so that they could file a petition seeking a redetermination of the alleged gift and estate tax deficiencies. In 1988, respondent sent petitioners *603 three separate notices of deficiency which became the subjects of docket Nos. 11131-88, 23026-88, and 23027-88 after the cases were commenced in this Court. The three cases have since been consolidated. However, for convenience and clarity, the remaining procedural facts and the parties' particular contentions regarding each case will, henceforth, be separately addressed. Respondent's Position in Docket No. 11131-88
The first deficiency notice, dated February 26, 1988, was issued to Ogden D. Dooley, Deceased, and Willie Jo Dooley, in her capacity as the surviving spouse. In the notice, respondent determined a deficiency of $ 977,147.67 in the 1981 income tax of Ogden and Willie Jo Dooley, and additions to tax under sections 6653(a)(1) and (2) for negligence and intentional disregard of the rules and regulations. In respondent's explanation of adjustments attached to the notice, she stated that the Dooleys had, among other errors, failed to report $ 1,873,500 in gross income for 1981 based on her apparent determination that the Dooleys had received the Petersen Ranch as compensation for services pursuant to the 1935 oral contract. Thus, according to respondent's explanation *604 of the adjustment, the fair market value of the Petersen Ranch, $ 1,873,500, was includable in the Dooley's gross income in 1981, the year it was received. In their petition filed in docket No. 11131-88, Willie Jo and her husband's estate generally disputed the entire deficiency and the additions to tax as determined by respondent in the deficiency notice. In particular, petitioners alleged that respondent had erroneously determined that "Decedent had received income in the amount of $ 1,873,500 based on the fair market value of the property received for the 1981 tax year." However, petitioners did not, either in their petition or in their reply, specifically allege that they had received the Petersen Ranch as an inheritance under Mrs. Bartberger's will excludable from income under section 102(a). Nor did they mention the opinions of the Texas appeals court or the Tax Court, both of which had just recently held that Dooley had received the ranch as an excludable inheritance. On March 26, 1990, petitioners filed a motion for summary judgment in docket No. 11131-88 seeking a determination by this Court that there were no deficiencies in, or additions to, their 1981 income tax because *605 decedent received the Petersen Ranch as an inheritance pursuant to the specific devise in Mrs. Bartberger's will. In her objection to petitioners' summary judgment motion, respondent acknowledged that, 1 month prior to the issuance of the deficiency notice in docket No. 11131-88, this Court held in Estate of Bartberger v. Commissioner, T.C. Memo. 1988-21, that the Petersen Ranch passed to Dooley by devise and was therefore includable in the Bartberger estate for estate tax purposes at its fair market value. Estate of Bartberger v. Commissioner, supra. Respondent argued, however, that until a final decision is entered in the Estate of Bartberger case to that effect and the time for an appeal has passed, she was justified in taking a position consistent with the taxpayer in Estate of Bartberger v. Commissioner, supra, specifically, that Dooley received the Petersen Ranch pursuant to the 1935 oral contract. On June 15, 1990, we denied petitioners' summary judgment motion in docket No. 11131-88 without a hearing or an opinion. In the parties' stipulated settlement of these cases, *606 they agreed that decedent received the 7346.97 acres of ranch land comprising the Petersen Ranch as an inheritance and that it was thus excluded from petitioners' income for 1981 under section 102. By reason of their settlement on this issue, the parties further stipulated that there were no deficiencies in Ogden and Willie Jo Dooley's 1981 income tax nor any additions to tax due under sections 6653(a)(1) and (2) as determined by respondent in the deficiency notice. Respondent's Position in Docket No. 23026-88
On June 9, 1988, respondent issued a deficiency notice to the Estate of Ogden Dooley, in which she took two alternative positions. In her primary position, respondent determined an estate tax deficiency of $ 4,782,813 and an addition to tax under section 6660 of $ 1,434,844 for understating the value of the estate's assets on the estate tax return. In the explanation of her "primary position" adjustments attached to the deficiency notice, respondent determined that most of the value of O.D. Dooley Ranches, Inc., was contained in the 20,000 shares of preferred stock that decedent owned when he died, and which therefore was included in the gross estate, pursuant to *607 section 2033. In this regard, respondent determined that the fair market value of the 10,000 shares of class A preferred was $ 9 million on the date of death, or $ 900 per share, and that the fair market value of the 10,000 shares of class B preferred stock was $ 1 million on the date of death, or $ 100 per share. The values for both the class A preferred and the class B preferred were undetermined on the return. Alternatively, respondent determined that most of the value of O.D. Dooley Ranches, Inc., resided in the common stock given to decedent's relatives, rather than the preferred stock held by decedent, resulting in the following deficiencies in gift tax, estate tax, and additions to tax: Estate Tax
Addition to Tax
Date
Deficiency
Sec. 6660
12/16/84
$ 297,492
$ 50,537
Additions to Tax
Gift
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
12/31/83
$ 57,383
$ 14,346
$ 2,869
[1]
12/31/84
$ 2,117,660
$ 529,415
$ 105,883
[1]
*608 In the explanation of her alternative adjustments and valuations, respondent determined that, on the date of decedent's death, decedent's 10,000 shares of class A preferred had a fair market value of $ 10,000, or $ 1 per share, and decedent's 10,000 shares of class B preferred had a fair market value of $ 1 million or $ 100 per share. Respondent further determined, as part of her alternative position, that the value of the 528 shares of common stock that decedent gave to his stepson and his three stepgrandchildren on December 25, 1983, was $ 475,200 on the date of the gift, or $ 900 per share, resulting in a taxable gift of $ 435,200 after excluding $ 40,000 from the transfer. Respondent determined that the value of the remaining 9,472 shares of common stock that decedent had given to Mrs. Dooley, his stepson, and his three stepgrandchildren on January 2, 1984, was $ 8,524,800 on the date of the gift, or $ 900 per share, resulting in a taxable gift of $ 4,334,900, after subtracting the marital deduction and excluding $ 50,000 from the transfer. No gift tax returns were filed with respect to decedent's 1983 and 1984 gifts of the common stock to his relatives. As a result, respondent *609 determined additions to tax for failure to file returns under section 6651(a)(1) and for negligence under section 6653(a)(1) and (2). Respondent made the following determinations in both her primary and alternative positions. First, respondent determined that the respective fair market values of decedent's interest in three pending lawsuits against Frost National Bank in its capacity as executor of the Bartberger estate were $ 7,310, $ 13,827, and $ 1,000 on the date of death. These three claims were listed as miscellaneous property items of the gross estate on Schedule F of the return, but their values were left undetermined. Second, respondent determined that the estate was only entitled to deduct $ 150,000 of the $ 424,000 deduction the estate had claimed for attorney's fees. Third, respondent disallowed the estate's deduction of $ 496,156 for administration expenses in its entirety. Fourth, respondent determined that the debts of decedent were only $ 5,156 rather than $ 1,363,391 as claimed by the estate on the return, and therefore the estate's deduction for decedent's debts was disallowed to the extent of $ 1,358,235. Fifth, the estate's claim to a $ 499,992 credit for *610 tax on prior transfers under section 2013 was disallowed in its entirety. Finally, respondent did not allow the estate a marital deduction in any amount. Petitioners never filed an amended estate tax return. In their petition in docket No. 23026-88, petitioners disputed all of the estate tax, gift tax, and additions to tax determined by respondent. In particular, petitioners affirmatively asserted that the total fair market value of the class A preferred stock issued by O.D. Dooley Ranches, Inc., did not exceed $ 10,000 on the date of death; that the total fair market value of the class B preferred stock did not exceed $ 500,000 on the date of death; and that the fair market values of the three lawsuits asserted by decedent against the Estate of Bartberger for delay rentals and title to the Petersen Ranch pursuant to a 1935 oral contract were $ 1 each on the date of death. Petitioners also asserted that on October 27, 1986, the probate court in Kinney County, Texas, approved of, and ordered decedent's estate to pay $ 27,000 to Henry Dalrymple for his services as the temporary administrator, $ 500,000 to Brite, Drought, Bobbit & Halter, Attorneys at Law, for its legal services; *611 and $ 150,000 to Elwood Cluck for his legal services. In her answer, filed November 7, 1988, respondent conceded that she had erred with respect to her disallowance of the estate's deduction of $ 367,886, under section 2053, for supplies, insurance, feed lot charges, and other miscellaneous expenses paid by Henry Dalrymple, the temporary administrator of the estate. Respondent also conceded that she had improperly disallowed the estate's deduction of interest incurred in connection with its determination and payment of any deficiency in inheritance taxes. With regard to the rest of petitioners' assertions in their petition, respondent denied all of them either outright or for lack of sufficient knowledge or information. On January 6, 1989, an informal meeting was held between respondent's counsel and petitioners' counsel in Austin, Texas. In a letter dated January 12, 1989, respondent thanked petitioners' counsel for the opportunity to meet and invited him to further review respondent's files to obtain any information helpful for the disposition of the cases. Respondent also offered petitioners' counsel the opportunity to copy substantial portions of the files of the three cases *612 in her possession. In the letter, respondent stated that formal discovery at that time was unnecessary and premature since informal and cooperative exchanges of information and documents could be made. No further contact appears to have been made by petitioners' counsel to respondent until April of 1989. On April 20, 1989, petitioners filed a motion to compel [12] respondent to furnish a statement, complying with section 7517, [13] explaining her valuation of the three classes of corporate stock of O.D. Dooley Ranches, Inc. In addition, on May 5, 1989, petitioners filed a 51-page document, pursuant to Rule 90, requesting admissions. *613 In response to petitioners' motion to compel, request for admissions, and other requests by petitioners for interrogatories, respondent filed a motion for a protective order. In her motion, respondent argued she need not comply with petitioners' motion for statements because section 7517 only provides a remedy at the administrative stage and that this Court's discovery rules supersede the application of section 7517 once a case in this Court has commenced. Respondent further argued that petitioners had not complied with the letter or spirit of Rule 70 regarding this Court's informal discovery procedures. Shortly after respondent filed her motion for a protective order, petitioners withdrew their request for admissions. On June 5, 1989, a hearing was held in Washington, D.C., on respondent's motion for a protective order. At the conclusion of the hearing, petitioners agreed to withdraw their motions to compel statements and respondent agreed to withdraw her motion for a protective order. Despite her contention that she need not comply with petitioners' request for valuation statements, respondent, on June 26, 1989, filed a detailed summary of her position regarding the valuation *614 of the common and preferred stock of O.D. Dooley Ranches, Inc. In her valuation summary, respondent chose to use the net asset method of valuing the corporate stock, based on her conclusion that O.D. Dooley Ranches, Inc., was not an operating, income-producing venture, but rather a real estate holding company with no apparent business purpose other than estate planning. Thus, it was respondent's position that the net value of O.D. Dooley Ranches, Inc., was equal to the overall value of the surface estates of the four ranches that were owned by the corporation. In valuing the four ranches, respondent relied primarily on two property appraisals by Suttle & Associates, the results of which, according to respondent, valued the four ranches at $ 8,081,000 in December 1983, and at $ 8,184,000 in December 1984. Respondent did not apply any general discount from net asset value for lack of marketability for the corporation as a whole. According to respondent, "it was a simple matter to remove the assets from the corporation, with no adverse tax effects, and there were no special factors (such as a business dependent upon a dominant stockholder) that would tend to justify a general discount *615 from asset value." In estimating the values of the four ranches, respondent took into account the clouds on the titles to the four ranches created by decedent's purported prior conveyance of the properties to a revocable trust and his daughters' allegations concerning decedent's lack of competence in effectively conveying the four ranches to the corporation. However, respondent concluded that such clouds on the titles had little effect on the ranches' values for purposes of valuing the gross estate. Respondent's reasoning was that any successful claim to ownership on behalf of the trust, of which decedent was the beneficiary, would inure to the estate, and any successful claim that decedent was not competent to convey property to the corporation would likewise benefit the estate. In allocating the total value of the corporation between the three classes of stock, respondent took the position that any discount applicable to the nonvoting common stock for lack of control, as urged by petitioners, was balanced by two premiums; one control premium which respondent applied to the class A preferred stock since they were voting shares, and another premium which respondent applied to *616 the class A and class B preferred stock since decedent's ownership of those shares gave him a residual claim to the corporation's clouded titles to the underlying real estate. After delineating her computations in her valuation summary, respondent concluded that the 10,000 shares of common stock on the two gift dates in December 1983 and January 1984 had a value of $ 3,485,000 or $ 348.50 per share. Respondent admitted that the 10,000 shares of class A preferred and the 10,000 shares of class B preferred shares were worth only their par values of $ 10,000 and $ 1 million when they were liquidated. However, respondent took the position that on the date of decedent's death, the value of the preferred shares was more than their par value due to the applicability of the control premium and the premium for the residual claims, the sum of which respondent valued at $ 4,923,000. In her valuation summary, respondent emphasized that the figures she arrived at were very close to the actual values ascribed to the various classes of stock by the shareholders in allocating the real estate proceeds of the liquidation of O.D. Dooley Ranches, Inc. Petitioners hired two stock valuation experts *617 to appraise the corporation's common stock as of December 25, 1983, and January 2, 1984, the dates on which decedent gave all the issued shares of common stock to his relatives. One appraiser, Clark Munroe & Associates, appraised the value of the common stock as of both gift dates at $ 27.17 per share. Petitioners' other appraiser, T.F. Woodley & Co., Inc., appraised the value of the common stock as of both gift dates at $ 17.50 per share. However, petitioners did not apprise respondent either of their initial position on the value of the common stock or of the results of the two expert appraisals until sometime after June 30, 1990, the date petitioners procured a written appraisal report by Clark Munroe & Associates. Petitioners did not apprise respondent of the results of the appraisal by T.F. Woodley & Co., Inc., which was undated, until less than a month before the trial of these cases was scheduled to begin on October 15, 1990. At the time respondent filed her valuation summary, she stated that she had not yet commissioned an expert appraisal of any of the corporate stock of O.D. Dooley Ranches, Inc. Subsequently, respondent hired an expert appraiser, Marshall Stevens, *618 who valued the common stock at $ 340.15 per share as of the two gift dates. In the parties' stipulated settlement, they agreed that the value of the common stock was $ 150 per share as of both gift dates. Their agreed valuation of the common stock resulted in their stipulation that there were no gift tax deficiencies for 1983, there was a gift tax deficiency of $ 143,787 for 1984, and there were no additions to tax under sections 6651(a)(1) and 6653(a)(1) and (2) for either 1983 or 1984, as initially determined by respondent in the deficiency notice. Petitioners and respondent further agreed in the stipulated settlement that the value of the 10,000 shares of class A preferred did not exceed $ 10,000 on the date of decedent's death, and that the value of the 10,000 shares of the class B preferred did not exceed $ 400,000 on the date of decedent's death. The parties further stipulated, based on their agreed valuations of the class A and class B preferred stock, that the total gross estate of decedent did not exceed the deductions allowable under sections 2053, 2054, and 2056. As a result of their agreed valuations of the preferred stock, the parties stipulated that there were no *619 deficiencies in petitioners' estate tax, nor were there any additions to tax due from petitioners under section 6660. Respondent's Position in Docket No. 23027-88
On June 9, 1988, respondent issued a separate deficiency notice to Mrs. Dooley in her individual capacity. In it, respondent determined a deficiency of $ 850,449 in gift tax for 1986, and an addition to tax under section 6651(a)(1) in the amount of $ 212,612 for failure to file a 1986 gift tax return or pay tax. Throughout the pretrial proceedings in these cases, respondent stated that her position in docket No. 23027-88 was taken in response to petitioners' argument that the south half of the San Jose Ranch qualified as property subject to the estate tax marital deduction under section 2056, regardless of the fact that Mrs. Dooley and her family ended up giving that property to decedent's three daughters in settlement of the will and deed contests. Respondent maintained that the south half of the San Jose Ranch was clearly given to the daughters in exchange for their relinquishment of all their inheritance rights to decedent's property and their agreement to terminate their claims against the estate. Therefore, *620 according to respondent, such property could not qualify for the marital deduction since it did not technically "pass" from decedent to his surviving spouse within the meaning of section 2056, especially in light of section 20.2056(e)-2(d)(1), Estate Tax Regs., which states that "If as a result of a controversy involving the decedent's will, or involving any bequest or devise thereunder, his surviving spouse assigns or surrenders a property interest in settlement of the controversy, the interest so assigned or surrendered is not considered as having 'passed from the decedent to his surviving spouse.'" Petitioners argued that due to an in terrorem clause in the 1983 will the daughters had no inheritance rights to exchange for the south half of the San Jose Ranch, and therefore, the property vested in Mrs. Dooley before she gave it to the daughters in a separate transaction. Respondent, in the notice of deficiency in docket No. 23027-88 thus took the position, viewing the Dooley family's transactions separately as urged by the estate, that there was a gift by the surviving spouse to the three daughters at the time of the settlement of the will contest, and therefore gift tax liability *621 for the fair market value of the gift on the part of Mrs. Dooley for 1986. After the estate abandoned its position that the daughters' settlement property was subject to the marital deduction in decedent's estate in docket No. 23026-88, respondent immediately abandoned her postion in connection with the surviving spouse's gift tax liability in docket No. 23027-88. Thus, in their stipulated settlement, the parties agreed that there were no deficiencies in Mrs. Dooley's 1986 gift tax, nor additions to tax owed by her under section 6651 for failure to file a 1986 gift tax return. After petitioners filed their stipulated settlement (in which respondent conceded all the tax deficiencies and additions to tax that she had initially asserted in the three deficiency notices, with the exception of $ 143,787 owed by the estate in 1984 gift taxes), stipulated decisions reflecting the parties' settlement were entered on October 23, 1990, without opinion. No trial was held. On January 22, 1991, petitioners filed their motion for litigation costs and attorney's fees under section 7430, which is the motion presently before us. As a result of petitioners' motion, this Court vacated its stipulated *622 decisions under Rule 162 [14] and ordered that respondent file a response to petitioners' motion for litigation costs. In their motion, petitioners contend that they are entitled to the following attorney's fees and litigation costs: Total Fee or
Attorney or Item
Hours
Cost Claimed
Elwood Cluck
$ 150,000
(attorney)
Kevin P. Kennedy
$   3,650
(attorney)
James L. Drought
$  52,500
(attorney)
Clark Munroe
$  13,765
and Associates
pocket expenses
118
(appraiser)
T.F. Woodley & Co.
valuation
$   7,075
services
(appraiser)
travel expenses
140
Miscellaneous
$   1,019
Expenses
$   1,019
TOTAL AMOUNT CLAIMED
$ 228,267
With their motion for litigation costs, petitioners filed a detailed affidavit which they claim adequately sets forth the nature and amount *623 of each item paid or incurred for which an award is sought, as required by Rule 231(d). In addition, petitioners submitted the affidavit of Willie Jo Dooley, dated November 17, 1990, in which she asserts that petitioners meet the net worth requirements of section 7430(c)(2)(A)(iii) in that her net worth "did not exceed $ 2,000,000" and the estate's net worth "did not exceed $ 7,000,000" at the time each of the petitions was filed in these cases. OPINION Section 7430(a) provides, generally, that a taxpayer who has substantially prevailed in a civil tax proceeding may be awarded reasonable litigation costs incurred in such proceeding. In order to be entitled to an award of litigation costs, the taxpayer must show that he was the "prevailing party" by establishing (1) that the position of the United States in the civil proceeding was not substantially justified, sec. 7430(c)(2)(A)(i); (2) that the taxpayer substantially prevailed in the proceeding with respect to either the amount in controversy or the primary issues presented, sec. 7430(c)(2)(A)(ii); and (3) that, at the commencement of the proceeding, the taxpayer met the net worth requirements specified in section 7430(c)(2)(A)(iii). *624 In addition, litigation costs will not be awarded unless the taxpayer can demonstrate that he exhausted the administrative remedies available to him with the Internal Revenue Service, sec. 7430(b)(1); that the taxpayer did not unreasonably protract any portion of the proceedings for which litigation costs would otherwise be awarded, sec. 7430(b)(4); and that the amount of costs claimed is reasonable, sec. 7430(c)(1). These are conjunctive requirements which must all be met in order for an award to be made to petitioners. Sher v. Commissioner, 89 T.C. 79 (1987), affd. 861 F.2d 131 (5th Cir. 1988); Minahan v. Commissioner, 88 T.C. 492, 497 (1987). Petitioners have the burden of proof as to each requirement. Rule 232(e); Welch v. Helvering, 290 U.S. 111 (1933); Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990). Respondent concedes that, based on the parties' settlement agreement, petitioners have substantially prevailed with respect to the amounts in controversy in all *625 three cases. However, respondent contends that petitioners are nonetheless not entitled to litigation costs because they have not shown that they meet the other requirements of section 7430. For the reasons stated below, we conclude that petitioners have failed to prove that the positions of respondent were not substantially justified. Accordingly, as petitioners have failed to meet one of the prerequisites to their qualification as the "prevailing party" within the meaning of section 7430(c)(2)(A), we hold that they are not entitled to an award for litigation costs and attorney's fees. Whether respondent's positions were substantially justified or not turns on a finding of reasonableness, based on all the facts and circumstances, as well as legal precedents relating to the case. [15]Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 694-695 (1990); Sher v. Commissioner, supra at 84; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). *626 The legislative history of section 7430 provides additional guidelines for determining whether respondent's conduct was substantially justified. Other factors the committee believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant. * * * * [H. Rept. 97-404, at 12 (1981).] Section 7430(c)(4) defines the "position of the United States" to include: (A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based. [16]
*627 Thus, under the statute, our application of the substantially justified standard to administrative actions or inactions prior to the institution of a proceeding is limited to the period beginning with the point at which district counsel has become involved. From the record, it appears that respondent's district counsel first became involved when he was preparing answers to the petitions that were filed in these cases. Therefore, we consider respondent's position in each case from the date the petition was filed in the particular case until the cases were all simultaneously settled on January 14, 1991. In their motion for litigation costs, petitioners place particular emphasis on the fact that respondent initially determined deficiencies in income tax, gift tax, estate tax, and additions to tax, totaling well over $ 8 million, but ultimately settled the three cases for a deficiency of only $ 143,000 in gift tax for 1984. We agree with petitioners that, at first blush, the huge dollar amount of respondent's concessions casts doubt on the reasonableness of her litigating positions in these cases. However, the fact that respondent eventually loses or concedes the case is not *628 sufficient to establish that her positions were unreasonable. Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Vanderpol v. Commissioner, 91 T.C. 367, 370 (1988); Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986); Baker v. Commissioner, 83 T.C. 822, 828-829 (1984), vacated and remanded on other grounds 787 F.2d 637 (D.C. Cir. 1986). Moreover, the deficiency notices were issued prior to the time district counsel became involved and thus the positions taken in the notices themselves are not directly relevant to the determination of whether respondent was substantially justified within the meaning of section 7430. We have reviewed and summarized the events leading up to the filing of the parties' pleadings only "to determine whether respondent acted reasonably in pursuing the litigation" in the light of what she knew at the time the litigation commenced. Rutana v. Commissioner, 88 T.C. 1329, 1332 (1987) (citing Don Casey Co. v. Commissioner, 87 T.C. 847, 862 (1986)); Sher v. Commissioner, 89 T.C. at 85; *629 see also Tinsley v. Commissioner, T.C. Memo. 1992-195. Given the sheer complexity of the facts and the convoluted nature of these cases, we are inclined to find that respondent's litigating positions and the amount of time she took to concede them was reasonable. We note that even petitioners' attorney, Mr. Cluck, at the hearing held on June 5, 1989, characterized these cases as having a "long, tortuous" factual background. Whenever there is a factual determination with respect to a tax return, respondent is not obliged to concede the case until the necessary documentation is received to prove the taxpayer's contentions and claims. Sokol v. Commissioner, supra at 765 n. 10; see also Johnson v. Commissioner, T.C. Memo. 1991-447; Spirtis v. Commissioner, T.C. Memo. 1985-44. Certainly, in the instant cases, respondent was faced with making a number of difficult factual determinations, each of which had some significant legal and tax implications. Initially, respondent had to do this without the benefit of knowing petitioners' positions on such issues as *630 how decedent acquired the Petersen Ranch, the valuation of the corporation's real estate assets, what factors might qualify the real estate assets of the corporation for special use valuation methods, the proper valuation of the stock of decedent's closely held corporation and the allocation of that value among the various classes of stock, and the nature, values, and amounts corresponding to many other property transfers of decedent and his estate. Under these circumstances, it would be illogical for respondent to make blind concessions rather than continuing her factual investigation of these legally intertwined cases. We find that respondent was reasonable both in the amount of time she took to investigate these cases and in taking protective litigating positions until the point that petitioners had apprised her of their specific claims and provided her with the necessary documentation to support them. See and compare Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1988), affg. T.C. Memo. 1987-52 (concession some 6 months after answer filed, after respondent had an opportunity to verify information, held reasonable); *631 Ashburn v. United States, 740 F.2d 843 (11th Cir. 1984) (11-month delay in conceding case not unreasonable); Wickert v. Commissioner, 842 F.2d 1005 (8th Cir. 1988), affg. T.C. Memo. 1986-277 (concession 10 days after filing of answer, although it took several months to draft the stipulation of settlement, held to be reasonable). Even upon closer scrutiny, we believe that respondent was substantially justified in the specific positions she took in each of these three cases once petitioners had informed her of their positions. First, in determining whether respondent was substantially justified with respect to her argument in docket No. 11131-88, that decedent realized gross income in 1981 when he received the Petersen Ranch from Martha Bartberger, we find that a number facts weigh in respondent's favor. In petitioners' joint Federal income tax return for 1981, they made no disclosure whatsoever as to how they acquired ownership of Petersen Ranch. There was no indication on the return that Dooley had received it in 1981 as an inheritance under Mrs. Bartberger's will, excludable from gross *632 income under section 102, or whether Dooley had received it as compensation from her for his past services as ranch manager pursuant to the 1935 oral contract with her father, making it gross income in 1981 for tax purposes. We have previously held that a purported bequest is not subject to the exclusion under section 102(a) when such bequest is made in recognition of, and in compensation for, past services. Wolder v. Commissioner, 58 T.C. 974 (1972), affd. in part, revd. in part and remanded 493 F.2d 608 (2d Cir. 1974); see also Miller v. Commissioner, T.C. Memo. 1987-271. Under the facts known to respondent at the time she sent the deficiency notice, and especially in light of Dooley's claims during life, it was reasonable for respondent to argue that decedent received the Petersen Farm as compensation for his past services to N.P. Petersen and his daughter, Mrs. Bartberger. We observe that prior to the issuance of the deficiency notice, the Texas appeals court had issued a decision and the Tax Court had issued an opinion (although no final decision), holding that Dooley acquired the Petersen *633 Ranch as an inheritance from Mrs. Bartberger and not pursuant to the 1935 contract. See Estate of Bartberger v. Commissioner, T.C. Memo. 1988-21. Even in light of this authority, we find that respondent was reasonable in initially holding out and taking a protective position in the instant case. According to respondent, she wanted to delay making any concessions until this Court had issued its final decision in Estate of Bartberger v. Commissioner, supra, and the time frame for a possible appeal of its holding had passed so as to avoid a possible "whipsaw" litigating situation on appeal. Although a final decision in Estate of Bartberger had not been issued prior to settlement of the instant cases, respondent went ahead and conceded her position in docket No. 11131-88 based on the "perceived strength" of her contrary position in Estate of Bartberger and because the issues in petitioners' two other consolidated cases were settled. Under these facts, we find that respondent acted reasonably and that the litigating position she took in this particular case, docket No. 11131-88, was substantially justified. *634 Secondly, we find that the primary and secondary litigating positions respondent took in docket No. 23026-88 against decedent's estate were reasonable. We place weight on the fact that the estate tax return filed by petitioners was substantially incomplete when it was filed. On the return, petitioners did not assign values to many of the properties in question, such as the four ranches and the corporate stock, but instead claimed those values were "undetermined". Petitioners apparently never filed an amended return. Thus, respondent did not have the benefit of petitioners' initial stance on the key item subject to the valuation dispute, the common and preferred stock in O.D. Dooley Ranches, Inc., until sometime after June 30, 1990, the date of the Clark Monroe & Associates appraisal which was procured by petitioners. Furthermore, we are persuaded that respondent was justified in using the net worth method of valuing the common and preferred stock of O.D. Dooley Ranches, Inc., in establishing her own valuation position in this case. Decedent's closely held corporation appeared to be a real estate holding company; it had no apparent business purpose, other than for estate planning. *635 Therefore, respondent was reasonable in choosing to measure the value of the corporation's underlying real estate assets -- the four ranches -- in order to best estimate the value of the preferred stock held by decedent at death and the value of the common stock he gave away during life. See, e.g., Estate of Oman v. Commissioner, T.C. Memo. 1987-71. One month before these cases were set for trial, petitioners informed respondent of their final valuation position on the corporate stock by delivering to respondent's counsel the undated stock appraisal report completed for petitioners by T.F. Woodley & Co. Inc. The parties were able to settle these cases within 1 month after petitioners apprised respondent of their final position on the operative issue, the valuation of the common and preferred stock of the closely held corporation. Under these facts alone, respondent was reasonable in holding out until she had received petitioners' final stance on the ownership and valuation of the stock and the necessary documentation to substantiate those values. Finally, we are convinced that respondent was justified in taking a protective position in docket No. *636 23027-88 due to petitioners' inconsistent position regarding the estate's entitlement to the marital deduction in docket No. 23026-88. In docket No. 23026-88, decedent's estate argued that the value of the south half of the San Jose Ranch qualified for the marital deduction under section 2056 in that it did not "pass" directly from decedent to his daughters, as it appeared to under the family settlement of the will contest, but rather "passed" to, and vested in, Mrs. Dooley under decedent's will, and was subsequently transferred in a separate transaction to the three daughters. Willie Jo Dooley, however, did not file a gift tax return with respect to her transfer of the San Jose Ranch property to the daughters. Being faced with petitioners' position in docket No. 23026-88 that Mrs. Dooley's transfer of the San Jose ranch was not given in exchange for the daughters' agreement to give up their inheritance rights, respondent logically concluded that the transfer must then be a gift, unsupported by any consideration, resulting in gift tax liability on the part of Willie Jo for 1986. We observe that respondent immediately conceded this protective position once the estate abandoned *637 its position in docket No. 23026-88 that the ranch property transferred to the daughters was subject to the marital deduction. Again, respondent acted reasonably under the circumstances. In light of the manner in which these cases evolved and viewing the record as a whole, we conclude that respondent's positions were justified. While respondent might have taken greater care in preparing the deficiency notices and providing explanations for the huge tax deficiencies in the first instance, the complexity and size of the particular litigation projects are not to be overlooked. From the point that the petitions were filed until the parties' stipulated settlement agreement was reached, all of respondent's activities were devoted to investigating the facts of these related and legally intertwined cases, making reasonable verification of petitioners' claims, and preparing and executing the documents necessary to determine and settle the disputed issues. In the absence of any indication that respondent pursued these matters for any reason other than to prevail in the litigation, we cannot say that respondent acted unreasonably. Vanderpol v. Commissioner, 91 T.C. at 370. *638 Accordingly, we hold that petitioners are not a "prevailing party" within the meaning of section 7430(c)(2)(A), entitled to an award of reasonable litigation costs. Petitioners have also failed to convince us that they exhausted the administrative remedies available to them with the IRS as required by section 7430(b)(1). Upon receiving the Commissioner's first examination report of the estate tax return in which respondent first proposed deficiencies in all three cases, petitioners did not file a protest or pursue an administrative appeal. They did not even make much of an effort to arrange conferences with the Service's examining agent. Rather, they requested by certified letter that deficiency notices be issued. We have found that respondent's litigating positions in these cases were substantially justified and further, that petitioners have failed to show that they exhausted their administrative remedies. Secs. 7430(c)(2)(A)(i), 7430(b)(1). Accordingly, we hold that petitioners are not a "prevailing party" entitled to an award of litigation costs and attorney's fees under section 7430. Petitioners' motion will *639 be denied. To reflect the foregoing, Appropriate orders and decisions will be entered. Footnotes
1. Cases of the following petitioners are consolidated herewith: Estate of Ogden D. Dooley, Deceased, Willie Jo Dooley, Co-executrix and C.J. Bitter, Co-Executor, docket No. 23026-88 and Willie Jo Dooley, docket No. 23027-88.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent issued the first deficiency notice to petitioners on Feb. 26, 1988, in docket No. 11131-88. The deficiency notices in docket Nos. 23026-88 and 23027-88 were both issued on June 9, 1988.↩
1. 50 percent of the interest computed on that portion of the underpayment attributable to negligence.↩
1. 50 percent of the interest computed on that portion of the underpayment attributable to negligence.↩
4. The Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 6239, 102 Stat. 3743, redesignated the provisions of sec. 7430(c)(2)(A), as applicable herein, as sec. 7430(c)(4)(A) for proceedings commenced after Nov. 10, 1988. We note that the proceedings in all three of the instant cases were commenced before↩ Nov. 10, 1988, and so the redesignation does not apply.
5. We note that petitioners' attorney in the instant cases, Elwood Cluck, also performed legal services for decedent with respect to his suit against the executor of the Bartberger estate in the Texas district court (Dooley v. Frost National Bank, No. 2371 (63rd Judicial Dist., Kinney County, Tex., July 2, 1986) for which he charged fees of $ 119,000. Mr. Cluck also performed services for the Bartberger estate in its Tax Court litigation in Estate of Bartberger v. Commissioner, T.C. Memo. 1988-21↩, for which he charged fees of $ 70,000. In both of those cases, Mr. Cluck argued, contrary to petitioners' litigating position in the instant case (docket No. 11131-88), that Dooley had received the Petersen ranch pursuant to the 1935 oral contract and not as an inheritance excluded from gross income under sec. 102(a).
6. Although the O.D. Dooley Farm is not by name a "ranch", for convenience, we will refer to it as such for purposes of deciding this motion.↩
7. "Bennet" is the surname that Patricia Dooley acquired in a marriage that ended prior to decedent's death. At the time of her father's death and the settlement of the daughters' will contest, Patricia's full name was Patricia Dooley Smith.↩
8. The action to contest the validity and probate of decedent's 1983 will was first initiated by Carole Dooley Kirby and soon joined by decedent's two other daughters, Diane Dooley Elrod and Patricia Dooley Smith.↩
9. This suit was also initiated by Carole Kirby and soon joined by decedent's two other daughters.↩
10. In this case, the estate tax return was due to be filed on Sept. 16, 1985, 9 months after the date of decedent's death. Sec. 6075(a).↩
11. Apparently, no amended estate tax return was ever filed.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
12. Petitioners' motion to compel was the second of three such motions filed by petitioners under sec. 7517. In the first motion, petitioners sought a statement from respondent explaining how she determined the value of the Petersen Ranch, which is the subject of the dispute in docket No. 11131-88. In petitioners' third motion to compel, they requested respondent to provide a statement explaining her valuation of the San Jose Ranch, the Petersen Ranch, the O.D. Dooley Farm, the Mountain Ranch, and a certain right-of-way easement which had been executed by a Clifton Belcher, as grantor, in favor of decedent, as grantee, for road purposes. ↩
13. Sec. 7517 provides as follows: (a) General Rule. -- If the Secretary makes a determination or a proposed determination of the value of an item of property for purposes of the tax imposed under chapter 11, 12, or 13, he shall furnish, on the written request of the executor, donor, or the person required to make the return of the tax imposed * * * a written statement containing the material required by subsection (b). Such statement shall be furnished not later than 45 days after the later of the date of such request or the date of such determination or proposed determination. (b) Contents of Statement. -- A statement required to be furnished under subsection (a) with respect to the values of an item of property shall -- (1) explain the basis on which the valuation was determined or proposed, (2) set forth any computation used in arriving at such value, and (3) contain a copy of any expert appraisal made by or for the Secretary. (c) Effect of Statement. -- Except to the extent otherwise provided by law, the value determined or proposed by the Secretary with respect to which a statement is furnished under this section, and the method used in arriving at such value, shall not be binding on the Secretary.↩
14. Sec. 7430(e)↩ provides that an order granting or denying an award for reasonable litigation costs shall be incorporated as part of the decision and shall be subject to appeal in the same manner as the decision.
15. The Tax Reform Act of 1986 changed the language describing the position of the United States from "unreasonable" to "not substantially justified", effective for civil tax actions or proceedings commenced after Dec. 31, 1985. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(d)(1), 100 Stat. 2085, 2752. However, this and other courts have held that the "substantially justified" standard is not a departure from the previous reasonableness standard. Sokol v. Commissioner, 92 T.C. 760, 763-764 n.7 (1989); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131↩ (5th Cir. 1988), and cases cited therein.
16. Sec. 7430(c)(4) was added by amendment to sec. 7430 in 1986 in an effort by Congress to resolve a split among the Federal Courts of Appeals as to whether the "position of the United States" includes only its litigation position after a petition is filed or both its pre-litigation and litigation positions. Sher v. Commissioner, supra.Sec. 7430(c)(4) applies to any amounts paid after Sept. 30, 1986, in proceedings commenced after Dec. 31, 1985. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(e), 100 Stat. 2753. We note that prior to the enactment of sec. 7430(c)(4), the U.S. Court of Appeals for the Fifth Circuit, to which the instant cases are appealable, interpreted sec. 7430 to allow an examination of both prelitigation and litigation positions, and stated that a position of respondent that forces a taxpayer to file a suit is to be examined. Powell v. Commissioner, 791 F.2d 385, 391 (5th Cir. 1986) (remanding case to Tax Court for determination as to whether respondent's position that caused the taxpayer to file suit was reasonable). However, sec. 7430(c)(4), rather than the Fifth Circuit's holding in Powell v. Commissioner, supra↩, applies to these cases, given the effective date of the statute as stated above.